McCALEB, Justice.
 

 Defendant is appealing from a judgment expropriating his land to the Caddo Parish School Board for use as the site of a public school, and fixing the compensation therefor at $9,750. The tract, which contains approximately 5 acres, is unimproved property situated in a Negro neighborhood on the edge of the City of Shreveport. The right of expropriation is acknowledged and, therefore, the sole question for determination is the value of the property, defendant contending that it is worth $20,000.
 

 Defendant acquired the land in 1950 for $4,800. The following year he recorded a subdivision plat, dividing the tract into 28 lots, and it then became known as the Wilier Subdivision. According to the photographs filed in evidence, the land is properly classified by some of the witnesses as “raw acreage”, as no change whatever has been wrought by defendant since he recorded the subdivision plat. No streets have been graded, no utilities installed and none of the lots have been sold. During the years. 1952 and 1953, the tract was assessed at $1,400. The neighborhood of this property and its position adjacent to two other subdivisions, known as the Saphronia and Gold Coil Subdivisions, render it particularly suitable as the location of a colored subdivision. Indeed, the land at present could have no higher value if used for any other purpose.
 

 The record shows that the Shreveport Real Estate Board, as a public service, appointed Mr. L. L. May as Chairman of an Appraisal Committee, which was to make a fair and impartial valuation of the property involved herein. Pursuant to a request by the School' Board to the Shreveport Real Estate Board, Mr. May appointed two other realtors (Messrs. Dew and George), to assist him in the appraisal of this tract. These experts made a thorough investigation, consisting of an examination of the land, interviews with witnesses and adjoining property owners, and scrutiny of sales of similar property in the vicinity. After completion of their studies, they fixed the sound value of the property at $9,750, which was accepted by the district judge.
 

 A careful examination of the evidence in the case has convinced us that the defendant is without grounds of complaint and it is our opinion that the $9,750 award is not only fully justified by the proof but actually represents a most liberal allowance for the property taken.
 

 It is well settled that the compensation to which the owner is entitled
 
 *206
 
 in expropriation cases is the market value of the property and that, where there have been sales of similar property in the vicinity of that sought to be taken, they constitute the best criterion of its value. Texas Pacific-Missouri Pacific Terminal R. R. v. Dittmar, 161 La. 444, 108 So. 877, and City of New Orleans v. Noto, 217 La. 657, 47 So.2d 36.
 

 In this case, the School Board introduced evidence showing the price paid for five other tracts purchased by it during 1953 for school purposes. Most of this land was within the city limits of Shreveport and at least as valuable as defendant’s property. The considerations paid for these tracts were, respectively: $750 per acre; $1,000 per acre; $2,340 per acre; $1,500 per acre and $1,000 per acre. The judge’s award of $1,962 per acre herein compares most favorably with these prices.
 

 Since the property is adjacent to two other subdivisions, defendant bases his claim for roughly double the amount allowed by the judge on the theory that he should be able to sell the so-called lots, which he has recorded in a subdivision plat, for over $675 apiece.
 

 The evidence does not sustain this proposition. It discloses that the SaphroniaSubdivision, which is substantially identical to defendant’s property in its physical characteristics, has obtained prices for its lots ranging between $200 and $350, excepting -one lot which sold for a recited considera- ■ tion of $500. This price was so far out of line with the other sales that it was disregarded by Mr. May when he made his appraisal. But, even if it were táken into account, the overall average price of lots in the Saphronia Subdivision would still be well below $350, the per-lot price awarded by the trial judge for defendant’s property.
 

 The Gold Coin Subdivision is more valuable than defendant’s property as it has electricity and better access to transportation. While there were two 25-foot lots in this subdivision which sold for $675, they were corner lots facing on a through street, and, undoubtedly, had a much greater value than any of defendant’s lots. Other sales in the Gold Coin Subdivision -established $400 as the fair price for two 25-foot lots
 
 [1]
 
 located within the immediate vicinity of defendant’s property. But these lots, as we have stated, are more valuable than those of defendant. In fact, one of defendant’s witnesses testified that the introduction of electricity into the Gold Coin Subdivision represented an expense of $60 per lot.
 

 Defendant’s complaint that the judge erred in accepting the exact value placed on the property by the Appraisal Committee of the Shreveport Real Estate Board is without merit. The record reveals that these gentlemen were experienced, fair and impartial and that their opinions were founded on fact.
 

 
 *208
 
 Nor do we think that the rule enunciated in City of Shreveport v. Abe Meyer Corp., 219 La. 128, 52 So.2d 445, 447, has been departed from herein, as counsel for defendant contend. The rationale of that case is that, in determining market value, consideration is to be given to “the most profitable use to which the land can be put, by reason of its location, topography and adaptability, * * *.” In this case, the realtors testifying for plaintiff stated that, in appraising the property, they took into account the fact that the contemplated use of the land was for a subdivision.
 

 Finally, counsel declare that the evidence justifies a conclusion that defendant could realize approximately $20,000 for his property “if left alone to carry on his business as he had planned”. But compensation in expropriation proceedings cannot be based on what might have been derived from the property if the condemnation proceedings had not intervened. This was recognized in City of Shreveport v. Abe Meyer Corp., supra, where, in remanding the case for the hearing of additional proof concerning the value of the property for subdivision purposes, we instructed the judge to limit the evidence to that relevant to the price a prospective purchaser for subdivision purposes would have been willing to pay for the property “and not what the land would have been worth if a subdivision had been established thereon.”
 

 The judgment appealed from is affirmed.
 

 [1]
 

 . Defendant’s lots have a frontage of 48 feet.