SAVOY, Judge.
This is an expropriation suit by Trunk-line Gas Company for the purpose of obtaining a servitude for the construction of a 26 inch high pressure pipeline across a 42.889 acre tract of land owned by the defendants in Acadia Parish.
The district court ordered the expropriation upon the payment of $2,475.00 for the servitudes and damages to the property. The record shows that this amount was reached as follows:
(a) $600 for .355 acre permanent servitude
(b) $300 for .805 acre temporary servitude
(c) $500 damages to lot 53
(d) $500 damages to lot 26
(e) $400 damages to lot 25
(f) $100 damages to lot 54
(g) $75 damages to lot 52
Also, specific instructions and limitations concerning the servitude are contained in the judgment.
Plaintiff appealed and defendants have answered the appeal. The only issue on appeal is that of quantum.
Plaintiff urges that the district court was in error (1) in allowing defendant damages based on subdivision property; (2) in awarding $600 additional damages after making an award based on fee value; and (3) in awarding $300 for the use of a .805 acre tract during the ninety-day construction period. Plaintiff urges that the land should be valued as rice acreage, at no more than $400 per acre; that only 50%. of the fee value thereof should be awarded! for the servitude, and accordingly, that the .355 acre permanent servitude should be valued at $142.00. Also, plaintiff contends' that only $171.00 should be awarded for the temporary servitude of .805 acres. .
Defendants argue that the damage to the 4 lots of their proposed subdivision crossed by the permanent servitude should be fixed at $1,000.00 each, and the damage to the adjoining lots should be fixed at $500.00 each. Also, it is urged that the awards of $300.00 for the temporary use of the .805 acre during construction and of $600.00 for the permanent servitude of .355 acre should be upheld. Accordingly, defendants urge that the judgment of the district court should be amended and affirmed by increasing the judgment from $2,475.00 to $6,900.-00.
The facts show that on May 7, 1959, the defendants, father and son, purchased for $10,000.00, a parcel of land containing 42.880 acres located 1.3 miles northeast of the City Limits of Jennings, on the Jennings-Evangeline Highway.
The property fronts 476.9 feet on the highway, and extends to the north of the highway, between parallel lines, a distance of 3,376.5 feet on the west boundary, and a distance of 4,058.6 feet on the east boundary. A plat was prepared by a registered land surveyor, dated May 7, 1959, whereby the property was divided into 77 lots measuring 100 feet by 213.45 feet each, (except the two irregular northernmost lots). The subdivision was designated as Evangeline Heights. This plat was never recorded in the records of Acadia Parish.
The right-of-way for the pipeline crosses this property diagonally, the center line measuring 514 feet, at approximately 2500 feet north of the highway. The permanent servitude contains approximately .355 acres. The temporary servitude for the ninety-day construction period, contains approximately .805 acres. With respect to the proposed Evangeline Heights Sub *426 division, the center line of the permanent servitude crosses the property from a point 35.5 feet north of the southwest corner of lot 26 to a point 16.4 feet south of the northeast corner of lot 54, passing through the south half of lot 26, the northeast quarter of lot 26, the south half of lot 53, and the extreme northeast corner of lot 54. The permanent servitude extends 15 feet from each side of the center line. The temporary servitude extends 35 feet on each side of the permanent servitude.
Plaintiff called as witnesses in its behalf, Lawrence Landos, Marion D. Edwards and Webb Guilbeau, and called the defendants on cross-examination.
Lawrence Landos was the Civil Engineer in charge of the project for the plaintiff. His testimony dealt with the laying of the pipe, specifications and other related matters.
Marion D. Edwards, a realtor from Crowley, was qualified as an expert, tie testified that the property taken was best suited at the present time for rice land or other agriculture operations. He appraised the full 'fee value of the property at $350.00 per acre, without regard to minerals. He was of the opinion that only the first 600 or 650 feet of the property could be developed for a subdivision in the foreseeable future. He concluded that if the property was developed into a subdivision, with a road to the back and the property leveled, that the owner could realize about $750.00 to $800.00 an acre. He testified that about two years ago, he had purchased one-half acre lots in a similar subdivision, near Crowley, for approximately $330.00 per lot. He valued the .355 acre permanent servitude at $115.00 and the .805 acre temporary servitude at $300.00.
Webb Guilbeau, a realtor in Crowley, was qualified as an expert. He testified that at the present time the property was best suited for rice land, and was worth $350.00 to $400.00 per acre. He believed that the property could possibly be used as a subdivision within one year.
Defendants testified themselves, and called on their behalf, H. A. Parker and Louis Simar.
It was stipulated that H. A. Parker was a qualified realtor and that he would testify as per his written appraisal, which was introduced into evidence. It was his opinion that the property taken would be worth $1,000.00 per lot, after the rice levees were broken down, the property leveled, and the road opened. He testified as to the lots in nearby subdivisions of comparable size, which were valued at $1,000.00 and over. He valued the defendants’ property in acreage as worth $1,000.00 per acre or more. He testified that he purchased acreage for a subdivision at about $1,000.00 per acre, which compared to defendants’ property. This land was not rice land and had large pine trees on it. It was his opinion that defendants’ property was best suited as a subdivision for homes. His appraisal showed that the 4 lots crossed by the permanent servitude would be of no value for subdivision purposes after condemnation proceedings.
Louis Simar, a merchant and a member of the school board for the ward, although not qualified as an expert realtor, was allowed to testify as to the development by himself of a subdivision, located approximately 1600 feet from defendants’ property. He and Thomas L. Levy, Sr. had sold to close friends and relatives, lots in this, unimproved subdivision at no profit. The price was $500.00, with the purchasers sharing the cost of developing the subdivision and road. He determined that these lots, size 110 feet by 363.6 feet, less 42 feet for a road right-of-way, would be worth $1,250.00 after the subdivision was developed. Also, in December of 1960, he had purchased nearby acreage, measuring 360 feet by over 1,000 feet, for $6,250.00, which is slightly over $750.00 per acre.
Defendant, Edward Thomas Cassidy, Jr., who is in the insurance business, testified that the property was purchased for the purpose of developing a subdivision and *427 that in January or February of 1960, a bulldozer was used to prepare drainage, for clearing the way for a roadway to the rear, and for clearing off and leveling the front 600 to 700 feet. He testified that in 1961 approximately $450.00 was spent in clearing the woodland. Also, he estimated that he and his father had spent over $3,500.00 already on the over-all development of the subdivision. Also, he testified that they have a bush hog, a road grader, and a Ford-son tractor. He testified that the development of the subdivision was delayed into 1960 because of the rainy season, and that its completion was postponed because of the economic conditions in Calcasieu and Jefferson Davis area. He stated that it was their intention to complete the subdivision in the latter part of 1961 or in 1962. He admitted that the property had a rice allotment and was pooled with other acreage for rice production, with the crop being rotated.
The property was in rice production at the date of expropriation for the first year since its purchase, although he and his father had received their pro-rata share of the rice production for the years 1959, 1960 and 1961, totalling $845.40. He testified that there was a United Gas pipeline and a Lafitte Oil Company pipeline crossing the southern portion of the property; one was a 4 inch line existing since about 1903, and the other line existing since 1930.
Edward Thomas Cassidy, Sr. was qualified as a realtor. It was stipulated that he would testify substantially the same as his son. As an expert, he valued the lots at $1,000.00 prior to the suit, and of no value after condemnation. He estimated the adjoining lots to be valued at about $500.00, $600.00 or $700.00 each after condemnation. Since it was his livelihood, he testified that he purchased the property to make a profit.
There was also introduced into evidence an aerial photograph of the property, numerous other photographs, copies of deeds of miscellaneous sales of property in the area, plats showing the location of these other properties in relation to the property taken, plats of the property taken, and a newspaper article which appeared May 7, 1959, in the Jennings Daily News, concerning the proposed Evangeline Heights Subdivision.
The first matter for consideration is the method to be used for evaluation of the condemned property.'
The plaintiff urges that the property should be valued as rice acreage, at no more than $400.00 per acre. It appears that the basis of the award by the trial court is fixed by valuing the lots of the proposed subdivision at approximately $1,000.00 each. Since the subdivision was not completed, plaintiff urges that the facts of this case are similar to the case of Transcontinental Gas Pipeline Corp. v. Bourgeois, (App., 1 Cir., 1959), 116 So.2d 888. However, in that case there was no showing that the defendants really contemplated a subdivision, and the plat of the property was prepared for purposes of suit only. It was shown that there was no sale of lots nearby, and there were no subdivisions between the City Limits of Thibodeaux and the property. The court based its decision on a comparative sale of land.
In the instant case, the evidence is clear that the defendants, one of whom was in the real estate business, purchased the property for purposes of a subdivision, and they actually took forward steps toward the development thereof, although completion of the subdivision was postponed because of business conditions. Also, there are numerous sales of individual lots as well as land for subdivision purposes only a short distance from the property taken.
After reviewing the jurisprudence, we hold that the proper basis for an award in this case is the market value of the property as shown by sales of similar property in the vicinity, taking into account the fact that the contemplated use of the land is for a subdivision. This is in line with the case of Caddo Parish School Board v. Willer, *428 227 La. 201, 78 So.2d 833, wherein the following language is found at pages 834 and 835, towit:
“It is well settled that the compensation to which the owner is entitled in expropriation cases is the market value of the property and that, where there have been sales of similar property in the vicinity of that sought to be taken, they constitute the best criterion of its value. Texas Pacific-Missouri Pacific Terminal’ R. R. v. Dittmar, 161 La. 444, 108 So. 877, and City of New Orleans v. Noto, 217 La. 657, 47 So.2d 36.
* * * * * *
“Nor do we think that the rule enunciated in City of Shreveport v. Abe Meyer Corp., 219 La. 128, 52 So.2d 445, 447, has been departed from herein, as counsel for defendant contend. The rationale of that case is that, in determining market value, consideration is to be given to ‘the most profitable use to which the land can be put, by reason of its location, topography and adaptability, * * *.’ In this case, the realtors testifying for the plaintiff stated that, in appraising the property, they took into account the fact that the contemplated use of the land was for a subdivision.
“Finally, counsel declare that the evidence justifies a conclusion that defendant could realize approximately $20,000 for his property ‘if left alone to carry on his business as he had planned’. But compensation in expropriation proceedings cannot be based on what might have been derived from the property if the condemnation proceedings had not intervened. This was recognized in City of Shreveport v. Abe Meyer Corp., supra, where, in remanding the case for the hearing of additional proof concerning the value of the property for subdivision purposes, we instructed the judge to limit the evidence to that relevant to the price a prospective purchaser for subdivision purposes would have been willing to pay for the property ‘and not what the land would have been worth if a subdivision had been established thereon.’ ”
In the recent case of State v. Boyer,(Ct.App., 3 Cir., 1961), 130 So.2d 738, decided by this Court, we held that property involved in that case was best suited for subdivision purposes where a survey of the property had been made, but the plat had not been filed or recorded. The clearing of the property and grading of streets and drainage ditches had been completed. The Court found that the property had been developed to the extent that a willing seller and a willing buyer would have arrived at an agreement as to price based on an amount per front foot rather than on an acreage basis. Considering all of the circumstances in the instant case, we are of the opinion that the best use for the subject property is for subdivision purposes.
After comparing the miscellaneous sales of individual lots, as well as the sales of acreage for subdivision purposes, in the vicinity of the property taken, we conclude that the market value of the property taken should be fixed at $1,000.00 per acre.
The closest comparative sale was the parcel of land purchased by Louis Simar for subdivision purposes which measured 360 feet by slightly over 1,000 feet in size. He paid $6,250.00 in December, 1960, for this property, whereas these expropriation proceedings were instituted August 15, 1961. Louis Simar and H. A. Parker also testified that the defendants’ land was worth $1,000.00 per acre.
Using $1,000.00 per acre as market value, the award for the .355 acre permanent servitude should be reduced to the amount of $355.00.
Mr. Marion D. Edwards, realtor, who testified on behalf of the plaintiff, *429 valued the .805 acre temporary servitude at the sum of $300.00. Accordingly, we find that the defendant is entitled to. recover that amount for this temporary servitude.
Since the property is valued for subdivision purposes, the proper method for assessing severance damages would he the damages to the proposed lots. This would be the measure a prospective buyer for subdivision purposes would use. The presence of a 26 inch high pressure gas line would certainly decrease the value of the remainder of each lot over which it passed and those nearby. On the other hand, these lots would have some value. Using an evaluation of $1,000.00 per acre, the 42.889 acre tract would be valued at approximately $43,000.00, with each of the 77 lots valued at approximately $550.00.
After examining the record in the instant case, and using the sum of $550.00 as the value of each lot, we find severance damage to lots 25, 26, 53 and 54 to be 75% of the original value of said lots after the taking or the sum of $1,383.00. This amount is arrived at by multiplying the 4 lots at $550.00, deducting therefrom the value of the servitude for the pipeline which we find to be $355.00, and taking 75% of the net amount of the original value of the 4 lots less the amount of the servitude.
We are of the opinion that the value of the remaining lots in the subdivision has not suffered any severance damages.
Summarizing, we have awarded $355.00 for the servitude for the pipeline; $300.00 for the temporary servitude; and, $1,383.00 for severance damages to the above-described lots, or a total award of $2,038.00.
For the reasons assigned herein, the judgment of the district court is amended by reducing the award made by it from the sum of $2,475.00 to the sum of $2,038.-00, and, as amended, is affirmed. Costs of this' appeal are taxed against plaintiff.
Amended and affirmed.