252 So.2d 483 (1971)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff & Appellant,
v.
Robert A. WOLFE, Jr., et al., Defendants & Appellees.
No. 3496.
Court of Appeal of Louisiana, Third Circuit.
August 20, 1971.
Rehearing Denied September 23, 1971.
*484 Johnie E. Branch, Jr., Golden Mills and R. Gray Sexton, by Johnie E. Branch, Jr., Baton Rouge, for plaintiff-appellant.
Stafford, Pitts & Bolen, by John L. Pitts, Alexandria, for defendant-appellee.
Before CULPEPPER, MILLER and DOMENGEAUX, JJ.
CULPEPPER, Judge.
For the purpose of constructing a new four-lane highway, plaintiff expropriated 9.48 acres of an approximately 19-acre tract owned by defendants. Plaintiff tendered $23,680 for compensation and damages at the time the suit was filed on October 14, 1969, under the provisions of LSA-R.S. 48:441 et seq. Defendants answered, claiming $64,400. The trial judge rendered judgment in favor of defendants for $39,053.42, an increase of $15,337.42 over the deposit made by the plaintiff. Plaintiff appealed, seeking a reduction in the award. Defendants answered the appeal, seeking an increase.
The award by the trial judge is itemized as follows:

1. Value of land situated
 north of gravel road (except
 .22 acres of isolated
 remainder) per acre $2,540.00
2. Value of Parcel 4-6 expropriated 22,047.20
3. Severance damage to
 small .22 acre tract, isolated
 remainder 257.40
4. Value of Parcel 4-5 expropriated 1,016.00
5. Severance damage to remainder
 south of gravel
 road 409.50
6. Severance damage to
 large remainder north
 of gravel road 2,687.32
7. Value of improvements
 expropriated 12,636.00
8. Total award $39,053.42

The only items at issue on appeal are numbers 2 and 6 listed above. Plaintiff contends the trial judge erred in finding the value of Parcel 4-6 to be $2,540 per acre for the 8.68 acres taken. It says the value is not over $2,000 per acre. Also, plaintiff contends there is no severance damage to the 10.58 acre remainder.
Defendants contend the trial judge erred in using what the experts called the "subdivision analysis method", i. e., the retail value of the proposed lots, less the cost of development and selling the property for residential purposes. Also, that the trial judge erred in deducting 15% for "developers profit."
The record shows that in 1965 the defendants purchased an original tract of approximately 25 acres for the sum of $35,000. This property is located about six miles south of the City of Alexandria and bounded generally on the east by the Alexandria-Baton *485 Rouge highway, on the north by Bayou Roberts, on the west by the Rock Island Railroad, and on the south by a gravel road. Defendants recorded a plat entitled "Brightwood Subdivision" dividing the property into 22 residential lots of approximately one acre each. During 1966 and 1967, they sold six lots fronting on the Alexandria-Baton Rouge highway, where lights, water, and gas were available, for a total of $25,900. However, except for the surveying and engineering costs, nothing further was done to develop the interior lots.
At the time of the taking in 1969, defendants still owned the interior lots, containing a total of 19.26 acres lying between the railroad right of way and the front six lots which had been previously sold. Parcel 4-6 taken by the plaintiff is a strip of land containing 8.68 acres adjacent to the railroad right of way, leaving the remainder of 10.58 acres. This remainder will front on a service road to be constructed along the east side of the new four-lane highway.
Four expert appraisers testified, Darrel V. Willet and M. C. Gehr for the plaintiff, and Donald L. Chambers and Hab Monsur for defendants. All agreed that the highest and best use of defendants' property at the time of the taking in 1969 was for development as a residential subdivision. The district judge summarized the relative testimony of the appraisers as follows:
"The consensus of the appraisers seems to be that after development this subdivision would bring to the developer about $5,000 a lot. According to the plat of the Pan American Engineers attached to the Willet appraisal, there could be obtained after streets and servitudes for utilities, 16 lots. This would be a total of $80,000.00.
"It would be necessary for the developer to put down a street through the subdivision. Two of the appraisers stated that after investigation they determined that the paving could be done for $6.00 a running foot. This would be a cost of $9,900.
"Next is the cost of laying a water line and a gas line. Mr. Chambers in his estimate only gave us an estimate of the water line and not of the gas line. Mr. Gehr estimated that the gas line would cost $1.00 a running foot and a water line would cost $4.00 a running foot. Mr. Willet estimated that there would be 2,000 feet of water and gas lines with a combined cost of $4.60 a foot. Mr. Monsur did not give an estimate of the amount of street or gas line. He estimated that the total cost of subdividing the property would be 10% of the ultimate gross sales. The Court finds that this estimate is incorrect as the paving alone would exceed 10% of the gross sales. A subdivider would get the best price that he could and the best price the Court finds is that determined by Mr. Willet and this amounts to $9,200.00.
"Mr. Willet included 15% for administrative costs which included advertising, commission, taxes, salaries, legal, accounting, etc. The work is being done by sub-contractors and it is presumed that these costs are figured in the figures obtained from the contractors. To add them in again would be to duplicate this cost. Mr. Gehr used a figure of 10% for sales cost. The Court is not going to include any sales cost because these two defendants are real estate salesmen and in this type business. They have sold off almost $26,000 for these lots and it is presumed they could sell 16 more lots without the necessity of bringing in additional salesmen. Mr. Willet used a developers profit of 25%. The Court considers this to be high. Mr. Gehr used developers profit of 15% as did Mr. Chambers. This is the profit that the Court will use and this amounts to $12,000. Both Mr. Gehr and Mr. Willet deducted for interest, one over a three year period and one over a four year period. The Court is not going to make any deduction for interest as an expropriation *486 is an instant taking and also the Court feels that the increase in the value of the land over three or four years would offset any interest that the developer would be paying on the money. If we were to add in interest then we would have to increase the value of each lot. It is a known fact that land values are increasing from year to year. Mr. Monsur stated that land values in this area have increased an average of 7% per year. This is the value of money at this particular time. There will be no deduction then for any interest. This gives a total value that a developer could pay for raw land of $48,900.00. Since there are 19.26 acres this would give a per acre value of $2,538.90. The Court will round this out at $2,540 per acre."
The first question is whether the trial judge erred in using the so-called "subdivision analysis method." We think the evidence clearly supports this approach. Although a subdivision plat had been recorded, no streets or utilities had been constructed. The lots were not ready for sale. Of the four expert appraisers who testified, three, including defendants' own witness, Mr. Chambers, used the subdivision analysis approach. This case falls within the rule of State Through Department of Highways v. Riley, La.App., 143 So.2d 396 (3rd Cir. 1962) and the authorities cited therein, where property was treated as raw acreage best suited for development as a residential subdivision, rather than lots ready for sale. It does not fall within State Through Department of Highways v. Barrilleaux, La.App., 139 So.2d 242 (1st Cir. 1962) where the six lots expropriated were in an existing subdivision in the center of the town of Lockport, with all streets and utilities available and the evidence showed the individual lots could be sold quickly without further development costs.
Plaintiff contends the trial judge erred in refusing to allow any deduction for the costs which a developer would have in administering, advertising and selling the lots. The district judge reasoned that since the defendants, Wolf & Wasson, are in the real estate business, they could sell the 16 lots without bringing in any additional salesmen or incurring any additional administrative costs. We are unable to agree with the district court. This would be a departure from the established rule that the measure of value of property expropriated for public use is market value at the time of the taking, i. e., the price which could be agreed upon by a willing seller and a willing buyer under normal circumstances, City of Shreveport v. Abe Meyer Corporation, 219 La. 128, 52 So.2d 445 (1951); State Through Department of Highways v. Jenkins, La.App., 207 So.2d 380; and State Through Department of Highways v. Mouledous, La.App., 200 So. 2d 384 (3rd Cir. 1967). In determining market value, any peculiar value which the property has to the present owner by virtue of his occupation, the use which he is presently making of the property or the plans which he has for the property in the future, are not considered. This is made clear in Caddo Parish School Board v. Willer, 227 La. 201, 78 So.2d 833 (1955) where our Supreme Court said:
"Finally, counsel declare that the evidence justifies a conclusion that defendant could realize approximately $20,000 for his property `if left alone to carry on his business as he had planned.' But compensation in expropriation proceedings cannot be based on what might have been derived from the property if the condemnation proceedings had not intervened. This was recognized in City of Shreveport v. Abe Meyer Corp., supra, where, in remanding the case for the hearing of additional proof concerning the value of the property for subdivision purposes, we instructed the judge to limit the evidence to that relevant to the price a prospective purchaser for subdivision purposes would have been willing to pay for the property `and not what the land would have been worth if a subdivision had been established thereon.'"
*487 Applying this jurisprudence to the present case, a deduction must be allowed for the developer's administrative costs, including advertising and selling the lots. We will accept the estimate of 10% by plaintiff's witness, Mr. Gehr, and deduct the sum of $8,000. In State, Through the Department of Highways v. Fontane, La. App., 185 So.2d 573 (1st Cir. 1966), writ of certiorari refused, a similar deduction was allowed for "commissions and miscellaneous sales expense."
Plaintiff's next contention is that the district judge erred in refusing to deduct interest on the developers' investment over the three year period necessary to sell the lots. The district judge reasoned that any costs for interest would be offset by the 7% annual increase in the value of the land. Under the evidence in this particular case, we cannot say the trial judge was manifestly erroneous in his refusal to deduct the interest.
Plaintiff's final contention is that the trial judge committed error in awarding severance damages to the 10.58 acre remainder. We think the judge correctly analyzed this problem in the following portion of his written opinion:
"The next matter for consideration is whether or not the remainder of the land has depreciated as the result of this taking. The two appraisers for the Department of Highways stated that in their opinion no depreciation resulted. The two appraisers for the land owners stated in their opinion 25% depreciation resulted.
"The Court is of the opinion that there was depreciation of the remainder of the land but in the amount of 10% and not 25%. All of the appraisers stated that lots deeper in a subdivision and beyond a main traveled road are worth more than lots facing a main traveled road. Prior to this taking all of the lots were located in the back side of the subdivision and away from the main road. After this taking the lots will be located on a service road. Therefore, according to the plaintiffs' appraisers testimony, the lots were worth more prior to the taking than they are after the taking. The plaintiffs' appraisers took some of the lots and used them for commercial purposes and increased their sales value in order to offset any depreciation. The Court feels that this is high speculation and that it can not indulge in such in reaching its decision. The Court feels that there is some depreciation because the lots will front the new highway service road. This would be a depreciation to the remainder of $2,587.32." (Later corrected to $2,687.32)
In their answer to the appeal, defendants contend the trial judge erred in deducting 15% for the developers' profit. They cite State Through Department of Highways v. Brooks, La.App., 152 So.2d 637 (2d Cir. 1963); State Through Department of Highways v. Barrilleaux, La.App., 139 So.2d 242 (1st Cir. 1962); and State Through Department of Highways v. Cobb, La.App., 169 So.2d 419 (3rd Cir. 1964). Those cases are distinguished, since in each the evidence showed that the subdivision had already been developed and the lots were ready for sale. We have already found that in the present case the trial judge correctly used the "subdivision analysis method." This leads to the conclusion that developers' profit is an item which must be deducted.
Summarizing, we find that 10% or the sum of $8,000 for costs of advertising and selling the lots must be deducted. Otherwise, we find the trial judge was correct.
For the reasons assigned, the judgment appealed is amended to reduce the award from $39,053.42 to the sum of $31,053.42. Otherwise than as herein amended, the judgment is affirmed. All costs of this appeal are assessed against the defendants appellees.
Affirmed, as amended.

*488 On Application for a Rehearing
PER CURIAM.
In an application for rehearing, defendants have called attention to a mathematical error, which we made. We allowed plaintiff a deduction of 10% for the developer's costs of advertising and selling the lots taken by expropriation. However, we erroneously applied this 10% to the entire 19.26 acres, comprising 16 lots, owned by defendants. We calculated the value of each lot at $5,000, a total of $80,000, of which 10% is $8,000, and allowed a deduction of $8,000. The State took only 8.68 acres, and the deduction for developer's costs of selling the lots should be allowed only as to this property actually taken.
The proper calculation of the 10% deduction for sales costs is as follows: The total of 19.26 acres owned by defendants could be subdivided into 16 lots with a retail sale value of $5,000 each, and a gross value of $80,000. We approved, in our original opinion, the deductions which the trial judge made for streets, utilities, etc., bringing the net market value down to $48,900. We have allowed an additional deduction of 10% of the $80,000 total for sales costs. This means that $8,000 must be deducted from the trial court's figure of $48,900, leaving the net market value of the 16 lots at $40,900. Since the 16 lots contain a total of 19.26 acres, this comes to $2,123.56 per acre as compared to the per acre value of $2,540 found by the trial court. The difference between $2,540 and $2,123.56 is $416.44 per acre, and for the 8.68 acres taken this comes to $3,614.70. Hence, the deduction of 10% for sales costs should be only $3,614.70 and not $8,000, which we allowed in our original opinion.
For the reasons assigned, our original opinion is amended so as to reduce the judgment appealed from $39,053.42 to the sum of $35,438.72.
Subject to the correction made in this per curiam, defendants' application for a rehearing is denied.