255 So.2d 613 (1971)
ORLEANS PARISH SCHOOL
v.
MONTEGUT, INC.
No. 4297.
Court of Appeal of Louisiana, Fourth Circuit.
December 16, 1971.
*614 Samuel I. Rosenberg, of Polack, Rosenberg & Rittenberg, New Orleans, for plaintiff-appellant.
D. A. McGovern, III, New Orleans, for defendant-appellee.
Before CHASEZ, REDMANN and BOUTALL, JJ.
REDMANN, Judge.
Plaintiff by this appeal seeks reduction of the amount awarded as compensation to the landowner in this expropriation suit. Defendant had answered the appeal but in brief seeks only affirmance. Other parties are no longer involved.
The special character of this case is that the lot of ground expropriated was in process of being improved with a 10-apartment building, for which only some piles had been driven. But plans, financing, etc. had been arranged; and an existing building had been demolished. Recognizing the inadequacy of simple market value of the land as just compensation under the unusual circumstances, the trial judge sought to make the owner whole by allowing it all its expenses for the project (hereafter described) plus a land value enhanced by $5,500 because of the owner's utilization of *615 the land in its highest and best use, for a total of $40,014.20. Generally we affirm, although we reduce quantum in respect to certain items.
Defendant purchased the expropriated lot for $18,500 five months before the suit was filed. An existing house was demolished at a cost of $2,410.00. Architect's plans for a ten-apartment building were prepared at a net fee of $5,010 and were approved by the Public Housing Authority of New Orleans, which agreed to rent the building when completed (and which took an option to purchase the entire immovable for $131,000). Interim and long-term financing (including acquisition financing) in the amount of $85,000 had been obtained for, respectively, a $500 fee and a $2,000 fee plus an obligation to pay another $1,000 if the long-term loan were not timely perfected. Legal fees and costs totalling $1,542.25 were incurred. Title insurance was purchased for $727.50. A real estate agent was paid $945 (in addition to his commission on the land sale) for "leg work" and as a "finder's fee" for locating the site. Builder's risk and pile-driving insurance was contracted for $1,290. Construction began but was stopped after driving a few piles when defendant learned of plaintiff's resolution to expropriate the entire square in which the lot was situated. By the time of the petition to expropriate, $589.45 interim financing interest had accrued.
Preliminarily plaintiff argues that since defendant knew plaintiff was considering expropriating either the square involved or an adjacent one, defendant should not have incurred most of the expenses involved. The error in this view is that it would expropriate property without compensation, pending a determination of whether or not to expropriate. As long as the owner's actions in the face of possible expropriation are "neither unreasonable, fraudulent nor predatory" his improvements are compensable; State Through Dept. of Hwys. v. Vermilion Develop. Co., 258 La. 1159, 249 So.2d 167 (1971).
When for public purposes property is to be "taken or damaged", Const. art. 1, § 2, or vested rights to be divested, art. 4, § 15, payment of "just and adequate compensation" is required.
For property taken the measure of compensation is ordinarily market value at taking, and for property damaged the diminution in value; Vermilion, supra.
And, usually, the value of improved real estate cannot be calculated by adding to raw land value the value of improvements considered separately; Texas Pac.-M. P. Term. R. v. Rouprich, 166 La. 352, 117 So. 276 (1928). Thus where expenditures have resulted in improvements to the land, the improvements are not separately recoverable. Even where separate valuation was had and not questioned, as in Louisiana Hwy. Comm. v. Davis, 204 La. 624, 16 So.2d 129 (1943), the cost of the improvement is not necessarily the same as its value, which is the quantum of recovery; Postal Tel. C. Co. v. Louisiana W. R. Co., 49 La.Ann. 1270, 22 So. 219 (1897).
Accordingly, under the ordinary rules relative to market value as compensation, plaintiff has support for its argument that payment of full market value of the lot, considered as raw land best usable for multidwellings, is the just compensation owed to the landowner, and that the various items above recited are not separately compensable, even though expended for the intended improvement of the land.
But there are exceptions to the market value rule; Housing Auth. of Shreveport v. Green, 200 La. 463, 8 So.2d 295 (1942).
Fundamental, in our view, is the recognition that market value of property taken is only utilized as a means of deciding "just and adequate compensation". Market value is not the constitutional objective and requirement; just compensation is.
In some cases market value at time of taking is not a just measure because market may have been elevated by the project itself, *616 if welcome, or depressed, if unwelcome; see, e. g., United States v. Reynolds, 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970).
In other cases market value is not a just measure because there is no real market, as, e. g., for a church building, United States v. Two Acres etc., 144 F.2d 207 (7 Cir. 1944), cert. dismissed 324 U.S. 884, 65 S.Ct. 711, 89 L.Ed. 1434; or for a shipyard in the course of its construction, United States v. Savannah Shipyards, 139 F.2d 953 (5 Cir. 1944), reh. denied 140 F.2d 863. These cases admitted cost of production or replacement as evidence of value or, the latter case said, "market value." It appears to us that although there is no real market (for its highest and best use) for a special-purpose building, or a building in a stage of construction, there will presumably be some market for the land (although depressed by the presence of undesired "improvements"). But this latter "market value" is evidently not "just compensation," however difficult it may be to articulate a more suitable test under the circumstances. Generally, whenever no market exists for the property being taken, a cost or replacement cost approach suitably adjusted according to circumstances is pertinent to determination of just compensation; Housing Auth. of Shreveport v. Green, supra; see also Orleans & J. R. Co. v. Jefferson & L. P. R. Co., 51 La.Ann. 1605, 26 So. 278 (1899).
The present facts suggest the inappropriateness of market value as compensation where a building project is underway but largely incomplete. Here some pilings were driven. A clearer case would have the concrete foundation finished. There is, presumably, no real market for lots with foundations on them; the market value of the lot as such would presumably be reduced by the cost of removing the foundation (and its encased plumbing) which lot-buyers in general would not want because not suited to their individual desires.
Yet we are satisfied that, should expropriation occur immediately after the foundation was finished, the just compensation required by the constitution would not be satisfied by paying market value of the lot (perhaps even depressed because of the foundation). We believe that just compensation would include both the market value of the naked lot and the reasonable cost of the foundation, unless the foundation was not suited to a proper use of the land (or had already been abandoned by the owner).
Evidently such items as piles, or other actual construction, become united with the land, so that the land cannot be taken without also taking them. On the other hand the architectural plans for the improvement are not taken; yet, if the land is relatively unique and therefore the plans cannot be used elsewhere, the land cannot be taken without destroying the plans. Perhaps a constitution requiring compensation only for property taken could be interpreted not to require compensation for the plans; but Louisiana's constitution obliges compensation for property taken or damaged. Thus, regardless of whether reasonable cost of reasonable plans made worthless should be included as a factor in calculating compensation for property taken, in Louisiana that particular item is compensable as property destroyed; Vermilion, supra.
In the case of a newly completed ordinary building being expropriated, market value is just compensation because it theoretically gives the owner full payment for all that he obtained for all the varied expenditures in constructing the building. He may have paid too muchto his coordinating personnel, to certain subcontractors, to his architect, or to his lender. Or he may have gotten bargain prices on some elements of his cost. But by the time the building is completed, the owner has got all that he paid for, whether by good or bad bargains. And all of it is in the building and land. Whatever the costslawyer's and architect's fees, financing costs, etc.the owner has nothing but the building and land, and *617 payment for them pays him for all he has. He may have a profit or a loss, depending on whether he conducted his building operation well, or poorly. But it is his profit or his loss, and not that of the expropriating agency.
In the case of a building just begun, as here, it cannot fairly be said that the owner's loss is his own. To start the project he had to hire an architect and he had to make some financing arrangements, perhaps including paying a broker for merely finding a lender; and, for all of this, he had to have a lawyer drafting and approving the several contracts. If the project were not frustrated by expropriation, the owner would have regained all of these costs by producing a building with a market value (hopefully) greater than their sum. In our judgment, to the extent that these customary expenditures were reasonable in amount, and reasonably directed towards production of a reasonable improvement to the landthat is, to the extent it could reasonably be anticipated the expenditures would have been regained in value at completionthe expenditures must be compensated in order to accomplish the constitutional mandate of just compensation for property taken or damaged.
The owner is not entitled to anticipated profits of an improvement scheme terminated by expropriation, Caddo Parish Sch. Bd. v. Willer, 227 La. 201, 78 So.2d 833 (1955); but repaying him his reasonable costs gives him no profit but only makes him whole, which is the constitutional requirement, Housing Auth. of Shreveport v. Green, supra.
The view that plans etc. are compensable may be to some extent inconsistent with State Through Dept. of Highways v. Circle Center Corp., 148 So.2d 411 (La.App. 1 Cir. 1963). But the application for certiorari there denied, 243 La. 1011, 149 So.2d 765, was by the state, and not the landowner. Thus the denial does not indicate approval of the court of appeal's refusal of the cost of reworking shopping center plans after a partial taking of the tract intended as the shopping center. Furthermore, on the facts there, unlike those here, the shopping center plans may have contributed to the land being evaluated as shopping center land rather than raw acreage, which amounts to a compensation for the plans by increase in value of the raw land.
Thus we will allow the established market value of the land and the reasonable expenses of the aborted project. However, since land market value compensates for all expense items attributable to land acquisition we must disallow those items in calculating the frustrated building project's reasonable actual cost to date of expropriation suit.
Accordingly we disallow the title insurance cost (even though the insured amount was greater than land value; presumably the insurer will rebate to the extent it is prohibited from insuring due to the expropriation), interest on money borrowed to purchase the land, and the $500 described as an interim financing fee, since it is not mentioned in the interim financing documents and was therefore presumably paid to borrow the initial money to buy the land. Finally, considering all of the legal work done, we disallow $542.25 as an approximation of the reasonable portion of fees and costs attributable to the land acquisition.
We do allow, as reasonable costs of items reasonably directed to reasonable development of the land in a project destroyed by expropriation, the following:
(1) Architect's plans' reasonable value, since the evidence reasonably shows they have been made worthless.[1] The evidence *618 does not support defendant's first claim of $6,750, nor even the reduced claim of $5,010, which were based on 6% of a building value of $112,200 instead of the $85,000 contract figure[2] or the $58,000 building permit figure. The walls enclose 7,185 sq. ft.[3] and, using defendant's evidence of $12 per foot value, the building would have a value of $86,220. We believe this confirms that the contract price of $85,000 (despite a close interrelationship between its parties) represents a reasonable contract cost on which an architect would base his fee. Further confirming evidence is a defense real estate expert's calculation of the "competitive" contract cost at about $75,000. According to defendant's evidence,[4] 4½% is approximately the fee where a project is called off immediately after plans have been completed (and thus neither architect nor associated engineers need do any inspection or supervision). We allow $3,825.
(2) Legal fees to the extent attributable to the building project (including financing contracts, lease, option etc.), in the amount, found to be reasonable, of $1,000.
(3) Long-term financing broker's fees of $2,000. The broker is paid for finding financing, and the moment he produces the lender he has completed his work and earned his fee. We distinguish a lender's charge for agreeing to lend in the future, which compensates the lender for the possible loss of interest while he must reserve the committed money, and which may (like interest) be earned to a greater or lesser degree depending on the portion of the commitment period which has passed. The evidence here is reasonably satisfactory that the fees involved were reasonable in amount and were of the nature of broker's fees, even though the broker did not disclose the long-term principal.
The $1,000 extra obligation if the loan were not perfected by defendant is in the nature of a penal clause to enforce defendant's obligation to "deliver" the loan by a specified date. Expropriation being a lawful excuse for non-performance of the principal obligation, the penal clause is not enforceable, C.C. art. 2120. Thus the $1,000 penalty is not properly an item of reasonable cost.
(4) The $945 paid to the real estate agent (in addition to the normal sale commission) appears to have been principally for coordinating "leg work" relative to architect's plans, HANO's requirements, and Planning Commission approval. Despite a reference to this item in testimony as being also a "finder's fee" for locating the suitable lot, we conclude the participation by this agent in a normal sale commission paid him for finding the lot, and that the extra $945 must be attributed to the "legwork" in putting the project together.
(5) Of the $1,290 pile driving and builder's risk insurance we are certain 100% is not a reasonable cost because a substantial rebate of unearned premium ought to be available since the insurer's risk (or the bulk of it) has been avoided by the expropriation. Yet we are also sure that to allow *619 nothing would be unsatisfactory, since some pile driving was done and the premium for that was earned; and there would presumably be a cancellation charge. Although with great hesitancy because (unlike with lawyer's fees) we cannot adequately apportion this cost, we make a rough allowance of 25% or $322.50 as the reasonable cost for the pile driving premium and cancellation of the balance of the insurance.
(6) The majority of the court[5] would also allow the demolition cost of $2,410, as not included in the $24,000 land value assigned by the trial judge. The real estate experts gave a spectrum of values from $21,000 to $28,000. Some experts did use some of the expense items (such as demolition) in reaching a value, while others used other items. From the trial judge's reasons for judgment it appears that he did not include this $2,410 in arriving at his value of $24,000, but allowed it in addition thereto. His figure of $24,000 was based on an increment caused by the fact that the landowner had put together a complete package of land, financing, construction contract, and tenancy upon completion, which, he felt, brought this parcel of land to its highest and best use. To this amount he additionally awarded the demolition costs which still places his figure below the maximum of $28,000 testified to.
(We note there was no evidence of the cost of the pile driving that was done, although the evidence is clear that piles were driven on two days. Accordingly there was no allowance by the trial court on this item.)
Defendant also complained that $24,000 land value exceeded the market value of the lot. Although the trial judge took a somewhat unusual approach under the unusual circumstances present, four experts estimated the value from comparable sales at $21,000, $22,460, $25,700 and $28,000. From our view of their testimony we conclude the $24,000 amount reasonably represents the market value.
The judgment is amended in quantum to $34,502.50 and is otherwise affirmed.
NOTES
[1] Plaintiff argues this work is usable on another site and thus defendant has suffered no damage. But the evidence shows that these apartments are designed to meet governmental public housing standards utilizing minimum room sizes and land space. The lot size here was 63.95' × 159.93'. A lot of differing total area might support fewer or more units, and one of different proportions but similar area might require architectural redeployment of component apartments or their parts. Only if the owner could find a similar lot, located acceptably to the City Planning Commission and HANO, would he have substantial use of the plans, requiring only minor modifications. Except for this speculative possibility, the plans have been destroyed. The school board made no showing to the contrary.
[2] The contract was not an arm's length bargain, since the contractors and defendant have substantial identity.
[3] Dimensions to wall exteriors are 30' × 110' plus additional projections of 5' over a total length of 58.5'. Walls are at right angles. Each of the two floors thus includes (30 × 110) plus (5 × 58.5) or 3,592.5 sq. ft. (One defense witness stated that the building is 9,350 sq. ft. and the defendant's building permit recites 6,200 sq. ft. We are unable to reach either of these figures from the plans.)
[4] The architect would reduce his fee to 5% and further reduce it by $600 (which is over ½% of $112,200); many architects, he said, would reduce the fees to 4½%.
[5] The author of this opinion here notes his personal view to the contrary, and his corollary view that generally the opinion's language referring to cost of acquisition as included in land value should refer to cost of both acquisition and value-increasing improvements.

As a matter of law, in his view, it is unjust compensation, being a double payment, to award to an owner both the enhanced market value of the property taken and the costs of enhancing the property. In principle such an award is indistinguishable from awarding both market value and purchase price of the land.
In the writer's opinion any theory that land values increase because the owners have profitable plans for its use defies the Supreme Court's holding in Caddo Parish Sch. Bd. v. Willer, supra, and the general principle of just compensation, that loss of anticipated profit is not compensable. The only acceptable justification for the $5,500 increase in value from $18,500 to $24,000 is that the demolition caused the enhancement.