LANDRY, Judge.
Plaintiff (Department) appeals a judgment awarding defendant Smith compensation in the sum of $32,942.10 for .82 acres of commercial property expropriated for highway purposes. Subject property is situated on the East side of La.-U.S. Highway 190 (190), in a subdivision known as Alex-iusville, approximately one mile South of Covington, Louisiana. We affirm.
Subject tract consists of nine squares, Number 40, 27 and 16 which front on the highway in question; Squares 41, 26 and 17, which lie immediately behind or to the East of Squares 40, 27 and 17, respectively,- and Squares 42, 25 and 18 to the East of Squares 41, 26 and 17, respectively. Each square measures 240 feet in width. The precise depth of each square is not shown with exactitude. The subdivision map shows a street parallel to Highway 190, separating the squares fronting the highway from those to the rear. Also’ shown on the maps are streets separating the sections in an easterly-westerly direction. These streets having been officially closed, for all practical purposes, subject squares are a single tract measuring 800 feet front on the East side of Highway 190 by a depth of approximately 580 feet. The tract, which contains 13.22 acres, is bounded on the north by Second Street which is used as means of ingress, there being no entrance or exit from Highway 190. The property is a highly developed estate containing a two-story, brick residence in the $100,000.00 class, situated on terraced grounds approximately 500 feet east of the highway. Terracing was accomplished by the utilization of dirt excavated in the creation of an artificial pond, part of which was taken in the expropriation proceeding. The grounds surrounding the pond were extensively developed, graded, landscaped and planted with expensive shrubbery principally came-lias of rare varieties, approximately 200 of which were destroyed by the taking. The pond was equipped with a submerged drainage facility situated on the bottom and located in the pond area expropriated. This device enabled the pond to be completely drained much in the nature of a bathtub. Additionally, the pond contained an overflow device which allowed excess water to drain from the top. A dirt road surrounded *180 the pond allowing access for vehicles necessary for maintenance of the pond and its surrounding flora. An area approximately 20 x 50 feet was taken from the western tip of the pond along with part of the service road. The taking destroyed 855 feet of fencing. It is conceded that although this “showplace” is presently occupied as a residence, its best and highest use is commercial to a depth of 250 feet from the highway right of way.
The taking involved a strip along the entire highway frontage. Commencing at the south end of the property, the strip is 28.44 feet in depth. It widens as it proceeds northerly to a depth of 70 feet to a point approximately midway the east-west street separating Squares 40 and 27. From this point, the strip proceeds northerly at a depth of 70 feet to a point about 60 feet north of the south boundary of Square 27. It then tapers northerly to a depth of approximately 30 feet at the north line of Lot 27, from which point it proceeds at the same depth to the north extremity of Square 16. The .82 acres taken contain 35,719 square feet. The taking does not reduce the owner’s frontage. Before the taking, Highway 190 was a paved two-lane highway. It is now a divided four-lane roadway. The tract has a remaining depth of approximately 550 feet.
The Department readily acknowledges its position taken upon trial below was calculated to obtain reversal and rejection of the front land-rear land method of valuation utilized by the courts in State, Department of Highways v. LeDoux, La.App., 184 So. 2d 604, and State, Department of Highways v. Landry, La.App., 171 So.2d 779, and authorities therein cited. The Department contends that the use of the front land-rear land standard of valuation results in unconscionable awards to landowners where, as here, full commercial value is awarded for a less than commercial depth strip which amounts to only a fraction of the parent tract, and the owner is left with the same amount of frontage as he had before the taking. With this purpose in mind, the Department concedes it has set out to convince the courts that the front land-rear land method is unfair to the expropriator, and that a more realistic and just method is the “average unit value” or “average contributory value” method. Accordingly, the Department instructed its appraisers, Edward Deano and H. B. Breeding, to use the “average contributory value” approach to determine the owner’s pecuniary loss. The first step in this method is determination of parent tract value before the taking as though the property were vacant. Secondly, the average per acre value is computed. The per acre value thus obtained is then applied to the area of land taken. The figure resulting represents the owner’s loss. This method of valuation was the sole basis of appraisal used by the Department’s experts.
The trial court rejected the Department’s contentions, and awarded compensation based on market value and application of the front land-rear land method of valuation as established by defendant’s experts. The oral reasons for judgment given by the trial court indicate his finding the property taken had a value of 85‡ to 90‡ per square foot. He also indicated defendant was entitled to the sum of $7,428.00 for the cost to cure the damage to the lake, landscaping, fence, shrubs and service road. Judgment was rendered for the sum of $32,147.10 with no itemization thereof. The judgment is silent as to whether credit is to be given thereon for the sum of $6,-633.00 deposited by the Department upon the filing of suit and withdrawn by defendant.
The Department alleges the trial court erred in: (1) Applying the front land-rear land method of valuation rather than the Department’s suggested contributory value basis, and in this manner, fixing compensation at an unconscionable amount; (2) Awarding the indicated amount for the “cost to cure”, which method of compensation has been repudiated by the Supreme Court in State, Department of Highways v. Mason, 254 La. 1035, 229 So.2d 89, except *181 in unusual cases; (3) Not giving the Department credit for the sum of $6,633.00 deposited in the registry of the Court when suit was filed in December, 1970, and (4) Awarding excess appraiser’s fees to defendants’ experts in the sum of $1,800.00 each.
METHOD OF VALUATION
Employing comparables and using the average contributory value method of appraisal, Edward Deano, appraiser for Appellant, valued the whole property before the taking in two parts. The frontage to a depth of 250 feet and containing about 4.6 acres, he considered worth $.45 per square foot, or $89,522.00. The rear 8.6 acres, he found to be worth $5,000.00 an acre or $42,-165.00, making a total value of $131,867.00, which, divided by the number of acres, produced an average per acre value of $10,-162.00. On this basis, Deano valued the .82 acres taken at $8,333.00. To this figure, he added $450.00 for fencing destroyed thus reaching a total value of $8,783.00. Mr. Deano found no severance damages. He did not consider the cost of curing the pond since, in his judgment, the pond added nothing to the commercial value of the part taken. Deano testified the land remaining had commercial value to a depth of 250 feet after the taking, and that the land to the rear of the commercial section had the same value as before. Mr. Deano used as comparables a sale from Hassel Kyte to Raymond Colby of a 4.3 acre tract in February, 1969, which brought a price of $.30 per square foot. The property involved is located south of defendant’s property, and on the opposite side of Highway 190. Since this tract was deeper, Deano concluded the sale indicated a $.45 per square foot value for subject tract. Deano also considered a sale from Sidney Flaspooler to Ray’s Furniture, Incorporated, in March, 1969, of a tract measuring 240 feet front by 280 feet deep, at a price of $.38 per square foot. Also considered by Deano was a sale from Carl Richards to Victor Osborne of a parcel 240 feet front by 297 feet deep in July, 1969, at a price of $.55 per square foot. Deano did not consider a sale by Ray’s Furniture, Incorporated in May, 1969, to Ten Investors of the same property acquired the previous March, which latter transaction was for the price of $.79 per square foot. Deano considered subject tract somewhat disadvantaged since it was lower than the highway elevation on which it fronted.
Appellant’s appraiser, H. B. Breeding, used essentially the same procedure as Deano and some of the same comparables. Breeding, however, arrived at a $.35 per square foot value, or $70,000.00 for the commercial portion, and $6,000.00 per acre, or $51,780.00 for the rear part, a total value of $121,780.00 for the entire tract. In this manner, Breeding found an average per acre value of $9,212.00, giving the .82 acres taken a value of $7,556.00. Breeding also set a value of $513.00 on fencing destroyed, making his total appraisal $8,069.00. Breeding found no severance damages. He also found the remainder was undiminished in value. He considered himself incompetent to appraise the cost of restoring the pond. He was of the opinion the pond contributed nothing to the commercial value of the part taken. He did not use the May, 1969 sale from Ray’s Furniture to Ten Investors. Breeding conceded, as did Deano, that his appraisal resulted in a value of $.15 per square foot for the property taken, but that as a separate entity, the expropriated portion was worth $.35 to $.40 per square foot. Breeding, as well as Deano, conceded that property in Alexiusville and nearby Maylieville Subdivision customarily sold in squares and half, squares insofar as recorded sales of commercial frontage showed.
Robert Lobdell, appraiser, representing defendant, used comparables to determine value for commercial purposes. He considered the three front squares only because he felt the value of the parent tract as a whole had no bearing on the value of the commercial highway frontage. He noted that Square 40 was the lowest elevation being considerably below highway level. He *182 also noted that Square 27 was slightly higher than Square 40, and Square 16 about level with the highway. Among the com-parables used by Lobdell was a series of sales involving Square 39, Alexiusville, directly across Highway 190 from subject Square 40. Square 39 was first acquired by Engineering Enterprises, Inc. in November, 1968, for a square foot price of 50.6^. Allowing for time adjustment factor of 2% increase in value per month, a value of $.84 per square foot was indicated for subject tract. This same tract was acquired by Ray’s Furniture, Inc. in March, 1969, for 65.60 per square foot. Allowing for time and other factors, this transaction indicated a $1.07 square foot value for defendant’s property. The acquisition by Ten Investors, Inc. in May, 1969, of Square 39, indicated an adjusted value of $1.17 per square foot for subject tract. Mr. Lob-dell pointed out that the elevation of Square 39 is essentially the same as that of subject squares. Lobdell also considered a sale from David to Hunter covering Square 52, situated two squares distant from subject property, for the unit price of 94.60 a square foot. Making adjustments for elevation, time and difference in improvements, he deemed Squares 40, 27 and 16 worth 86.30, 64.10 and $1.29 per square foot, respectively. Also using a sale of Square 62, two squares removed from subject squares, from Wilkinson to Willis, in November, 1969, at a unit price of 64.40 per square foot, Lobdell, making adjustments, assigned values of 86.30, 64.10 and $1.29 per square foot to Squares 40, 27 and 16, respectively. Lobdell noted that a detailed analysis of transactions involving frontage in the general area during 1967, 1968 and 1969, showed conclusively that such property appreciated in value at the rate of 2% monthly, as indicated by the three sales of Square 39 and other transactions of record. Based on the low comparable of $.84 per square foot, and the high of $1.17 (omitting the $1.29 per foot calculation), Lobdell concluded subject property was worth $.85 per square foot for commercial purposes. On this basis, he found the part taken valued at $43,850.00. Employing the 4-3-2-1 method of valuation, which divides the property into four 60 foot deep quarters, he arrived at a valuation of $71,288.00 for the part taken. He explained that this method assigns the greatest percentage of value to the front quarter and diminishing percentages to the rearward quarters in sequence. He also acknowledged that the value thus established was unrealistic. Lobdell found that the cost to cure the damage to the pond and surroundings was $7,428.00. He noted that the drainage mechanism would have to be relocated, the retaining dyke or levee replaced, the service road rebuilt, and the entire area regraded, relandscaped and replanted to restore the pond to its former size and condition. His total estimate of damages was $51,278.00. He confirmed that he charged defendant $1,500.00 for the time spent in preparing for trial, and that his fee for appearance in court was $150.00 per day. We note the trial covered two days.
Frank J. Patecek, testifying for defendant, employed as comparables all sales of highway frontage in Alexiusville and nearby Maylieville Subdivision made during 1969 and 1970. These included 30 in Alexi-usville and 17 in Maylieville, plus an unspecified number in Claiborne Subdivision. He relied, however, principally upon 8 sales, most of which were in Alexiusville, and which included the before mentioned latter two sales of Square 39. Making adjustments similar to those employed by Lob-dell, except for time which was less than Lobdell’s, Patecek valued Squares 40 and 27 at $.85 per square foot, and Square 16 at $.95 per square foot. He valued the part taken at $51,576.30. Patecek made no estimate of severance damages conceding he was not qualified to estimate the cost to cure the damage to the pond and surrounding area.
The Department relies upon State, Department of Highways v. Medica, La.App., 257 So.2d 450; State, Department of Highways v. Medica, La.App., 257 So.2d 454, *183 and State, Department of Highways v. Monsur, et al., La.App., 258 So.2d 162, all from the Third Circuit, as abandoning and overruling the front land-rear land method of valuation adopted in Landry and Le-Doux, above, also decided by the Third Circuit. Both Landry and LeDoux, above, involved taking of commercial property to a less than commercial depth, leaving the owner with the same amount of frontage with more than commercial depth remaining. In each instance, it was held that the owner was entitled to payment for commercial value squared off to commercial depth. In the case at hand, we find, as did the trial court, that the record establishes the commercial value of subject property to be $.90 per square foot.
The rationale of LeDoux and Landry, above, is that market value to which the owner is entitled is the market value of the particular part taken, not the average per acre value of the parent tract, and where the best and highest use is commercial, payment is due for commercial depth although less than that amount of land is actually taken. The premise is that an owner would not sell commercial frontage in less than commercial depth unless he received payment therefor in the amount of the value to commercial depth. We note that the same result was reached in State, Department of Highways v. Caillier, La.App., 157 So.2d 274, certiorari denied, 245 La. 572, 159 So.2d 285.
The Medica cases, above, do not repudiate the front land-rear land rule, as contended by the Department. These cases involved adjoining tracts, the takings occurring at the rear thereof. In these cases, the court declined to apply the front land-rear land rule on the ground the lands involved were of equal value throughout consequently there was no basis for applying the front land-rear land rule. Monsur, above, involved lands adjoining those involved in the Medica decisions. We note in Monsur the specific finding that the front land was not worth more than the rear land.
We are in agreement with the Department’s contention that just and adequate compensation is the goal to be achieved in expropriation cases. Orleans Parish School v. Montegut, Inc., La.App., 255 So.2d 613. Similarly, we agree that just and adequate compensation is that amount of mone.y which will place the owner in as good a position pecuniarily as he would have enjoyed had there been no taking of his property. State v. Barrow, 238 La. 887, 116 So,2d 703; Housing Authority of Shreveport v. Green, 200 La. 463, 8 So.2d 295. We believe application of the front land-rear land rule is in accord with these vital principles. We so find because to require acceptance from an expropriator of a sum less than the owner can reasonably expect to obtain on the open market from a willing and knowledgeable buyer does not leave the property owner in the same pecuniary position he would have enjoyed had he been able to sell his property on the open market. We conclude the trial court properly rejected the Department’s suggested method of valuation.
COST OF CURE
The Department, relying primarily upon State, Department of Highways v. Mason, 254 La. 1035, 229 So.2d 89, argues cost to cure should be allowed only in exceptional cases. It is contended that since subject property’s best and highest use is commercial, the portion of the pond and surrounding area taken contributes nothing to the value of the property for commercial purposes. We note that Mason, above, involved the partial taking of a school site necessitating the owner’s acquisition of sufficient adjoining property to continue to operate the school. Our consideration of Mason leads to the conclusion that it sanctions the cost of cure rule theretofore adopted by the Courts of Appeal, but limits its use, as contended by the Department, to unusual cases.
We also consider pertinent Humble Pipe Line Co. v. Wm. T. Burton Industries, Inc., 253 La. 166, 217 So.2d 188, wherein the Su *184 preme Court held an owner entitled to the value of crops damaged notwithstanding the best and highest use of the land was for industrial purposes.
We believe that here we have an exceptional situation sufficient, to justify application of the cost to cure rule. It is conceded that defendant’s property is artistically developed to a most unusual degree. The record establishes that to restore the premises to the former condition, extensive repair of the pond will be required. Restoration will also require considerable landscaping, replacement of fencing, regrading and resodding of the pond embankment, and replanting of rare shrubbery, some of which were imported from Japan. Additionally, defendant’s expert, Lobdell, testified on cross-examination that the pond could be a definite asset to certain types of commercial operations such as a bank or exclusive restaurant. The trial court considered Lobdell’s detailed estimated cost to cure in the sum of $7,428.00 to be reasonable. We find no error in this determination.
AMOUNT OF THE JUDGMENT
The taking involved a strip containing 35,719 square feet. The judgment rendered was for $32,942.10, and mentioned no credit for the Department’s deposit of $6,633.00. In its reasons for judgment, the trial court found the land value to be “about 85(S, between 85 jé and 90^ per square foot”. The sum of 90^5 per square foot times the number of square feet involved, 35,719, results in a valuation of $32,147.10 for the land taken. Adding to this, the sum of $7,428.00 allowed for the cost to cure, makes a total award of $39,575.10. Deducting from this sum the amount of $6,633.00 deposited by the Department leaves a balance of $32,942.10. We conclude the amount awarded in the judgment below was in addition to the amount of the deposit.
APPRAISERS’ FEES
Both Lobdell and Patecek testified that they charged defendant owner the sum of $1,500.00 for the time and work required in the preparation of their appraisals. The Department contends that since the witnesses did not indicate the time involved, or the value thereof, the court erroneously fixed each witness’ fee at the contract amount of $1,500.00 arbitrarily charged the owner herein. The Department correctly notes, on authority of State, through the Department of Highways v. Donner Corporation, La.App., 236 So.2d 841, that an agreement between an appraiser and a party to a suit as to the appraiser’s fee, is not the criterion to be used by the Court in assessing expert fees.
Also pertinent to this discussion is the rule that a trial court is vested with discretion in fixing the amount of an expert’s fees, and that his determination of such an issue will not be disturbed unless shown to be manifestly erroneous. State, Department of Highways v. William T. Burton Industries, Inc., La.App., 219 So. 2d 837.
The trial court’s reasons for judgment clearly indicate he did not fix the fees in this instance purely on the contract agreement between defendant and defendant’s experts. He reached the conclusion that the work involved justified the fees charged. The record discloses that both Lobdell and Patecek made detailed and involved studies of many sales and transactions incidental to making their appraisals. It also appears that each made a searching analysis of the data upon which their conclusions were based. While the exact time employed in their labors is not shown, we find no justification herein for concluding that the trial court abused his discretion in fixing said fees in this instance. We likewise find no abuse of discretion in the trial court’s allowance of a $150.00 per day court appearance fee for each said witness.
*185 It is ordered, adjudged and decreed that the judgment of the trial court be amended to read that the award in favor of defendants, Warren H. Smith, Jr., Mabel S. Turner, wife of/and Fred B. Turner, and Caroline S. Mitchell, wife of/and Leslie H. Mitchell, and against plaintiff, State of Louisiana, through the Department of Highways, in the sum of $32,942.10, shall be in addition to the sum of $6,633.00 deposited in the registry of the court by the Department.
It is further ordered, adjudged and decreed that, except as herein amended, the judgment is affirmed, the Department being cast for all costs for which it is legally liable.
Amended and affirmed.