276 So.2d 905 (1973)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
Rubin SPILLMAN.
No. 9271.
Court of Appeal of Louisiana, First Circuit.
April 3, 1973.
*906 James W. Murray, Highway Dept., Baton Rouge, for appellant.
Paul Due', Nesom, Mellon, Cavanaugh & Due', Denham Springs, for appellee.
Before LANDRY, TUCKER and PICKETT, JJ.
LANDRY, Judge.
The Department of Highways (Department) takes this appeal from a judgment awarding defendant Spillman (Owner) compensation in the sum of $19,332.00, for land expropriated for highway purposes. The main issue is the value of the property taken. Incidentally the Department complains of the amount awarded Owner's appraisers as expert witness fees. We reduce the compensation awarded for property taken.
On May 12, 1969, the Department expropriated.634 acres of a 4.187 acre triangular shaped tract belonging to Owner and situated on the West side of Range Road in Denham Springs, Louisiana. Range Road is the principal north-south thoroughfare in Denham Springs. Parent tract fronts 604 feet on Range Road by a depth on its south side of 562 feet; its north line extends 29.02 feet westerly on the west line of Range Road from whence its rear line runs 811.35 feet to intersect its south line. The taking condemned 27,617 square feet, consisting of a strip 45 feet deep along the entire 604 foot frontage, leaving owner a frontage of 586.32 feet.
Subject property is situated approximately one-quarter to one-half mile from the down-ramp of Interstate Highway 12. It is conceded the best and highest use for subject tract is commercial. All of the experts agree that in the vicinity of subject *907 property the ideal commercial site consists of a plot 200 feet front by a depth of 200 feet.
Owner purchased the property in question from Robert H. Tate, Sr. and Jr., in two transactions dated January 24, and May 17, 1968, respectively, each for an undivided one-half interest and at a price of $16,000.00, or $8,000.00 per acre.
David G. Carlock, appearing for the Department, valued the property at $8,200.00 per acre, or $5,199.00 for the part taken. In so determining, he used as a comparable the sales of subject property to Owner. He next considered the sales of two adjoining parcels measuring 128 feet front each, and situated on the opposite side of Range Road from subject tract. These sales, dated July 19, 1968, involved 1.4 acre plots, which sold for $8,571.00 per acre, or 20¢ per square foot. Both sales were by Eddie O. Turner, Jr., the purchasers being William R. Powers, who bought the most southerly lot, and Roy W. Powers, who bought the adjoining property. In making his determination, Carlock examined approximately 90 transactions, but considered the mentioned sales most nearly comparable. To his knowledge, the highest price paid for a commercial location in the area was the sale of a lot by Harco, Incorporated to Humble Oil and Refining Company on March 2, 1967. This sale involved a corner plot measuring 200 feet on Range Road by a depth of 166 feet on Rushing Road. The price of $52,325.00 indicated a square foot value of $1.35. Carlock considered this transaction was not a true comparable because the location consisted of a prime service station site situated adjacent to the down-ramp of I-12, for which oil companies vied, and customarily paid prices considerably in excess of normal market value.
Carlock conceded knowledge of the sale of a tract fronting 200 feet on the east side of Range Road directly across from subject property on January 17, 1969. The property which belonged to Eddie O. Turner, Jr., had a depth of 470 feet. The property was divided into two parcels, each sold in a separate transaction by sales dated the same day and made to the same purchaser, L. A. Lard, Jr. It is conceded Lard intended to convert the tract into a bulk gasoline dealership location. In the first transaction, Lard acquired a parcel having a front of 50 feet on Range Avenue by a depth of 230 feet, at which point it widened to 200 feet and extended an additional 238 feet. The sale was for $21,500.00, or $16,000.00 an acre, the equivalent of 36¢ per square foot. In the second transaction, Lard acquired a parcel fronting 150 feet on Range Road by a depth of 230 feet. This transfer was for $24,000.00, or 70¢ per square foot. Mr. Carlock stated he gave little weight to these transfers because he considered them in effect as a single transaction, and also because the 150 × 230 foot lot contained a residence in the $20,000.00 class. Carlock was aware of but gave little credence to a sale from Thomas L. Sullivan to Robert S. Mellon, on November 6, 1967, of a tract fronting 398 feet on Range Road by a depth of 150 feet, for a price of $24,000.00, or $15,000.00 per acre. Later, Mellon sold a one-half interest therein to his partner for $12,000.00. Carlock did not consider this parcel a very good comparable because of the presence of improvements thereon. He also stated he was searching for unimproved lands to use as comparables because subject property was unimproved. He was unaware the improvements on the property acquired by Lard were to be demolished by the purchaser. He learned that the property was divided into two parcels for sale because the portion containing the residence was burdened with a mortgage.
John Allphin, Appraiser, testifying for the Department, examined approximately 25 transactions as possible comparables. In reaching his conclusion that subject property had a market value of $8,200.00 per acre, or $5,200.00 for the .634 acres taken, he relied on the same comparables used by Carlock. He reached his appraisal by adjusting *908 the value of subject property, based on its sale price to Owner, from $7,805.00 per acre to $8,200.00 an acre due to increased value resulting from certain clearing work done thereon. He used the two Turner to Powers sales even though they involved smaller lots. In his opinion, smaller commercial lots sometimes sold for at least as much and sometimes more than larger commercial locations. Allphin also considered the sale of a lot from Eddie O. Turner to O. T. Waldrop on December 7, 1967. The property measured 150 feet front on the east side of Range Road directly opposite subject tract, and abutted on the south the property sold by Turner to Roy W. Powers. This lot sold for a price of $9,639.00 per acre. Allphin conceded that he relied heavily upon the two sales to Owner which he believed to be arms length transactions. He so concluded because the price paid by Owner was within the $8,000.00 to $9,000.00 per acre paid for similar property in the immediate vicinity.
Mr. Allphin discounted the Harco to Humble sale and the two Turner to Lard sales for the same reasons noted by Carlock. He also stated his investigation showed the Turner property was divided into two parcels for sale to Lard because the portion containing the residence was burdened with a mortgage. As did Carlock, Allphin did not consider the Sullivan to Mellon sale because he found the property contained a residence which he believed to be worth about $10,000.00.
Mr. John LeJeune, appearing for Owner, valued subject property at 83.6¢ per square foot, or $23,088.00 for the portion taken. He used as a comparable the sale from Turner to Roy W. Powers at a square foot price of 19.6¢. He also used the two sales from Turner to Lard. LeJeune disregarded the sale of the 50 foot front lot from Turner to Lard because it involved an L-shaped parcel, and he preferred a comparable more nearly the same size and shape as subject tract. He used the 150 × 230 foot sale from Turner to Lard, even though he was aware of the residence thereon, which he discounted completely because his investigation disclosed the price was paid for the land alone. LeJeune considered a commercial site for higher type commercials, such as a service station, as one measuring 225 by 225 feet, or 204 by 204 feet, which is approximately an acre. His investigation also disclosed that Lard bought both tracts with the view of converting the location into a bulk gasoline dealership operation. Lejeune acknowledged that the residence on the 150 × 230 foot lot bought by Lard was still there at the time of trial and being used by the present owner.
The last comparable used by Mr. LeJeune was the Harco to Humble sale. He acknowledged that the Harco was the highest priced transaction in the area prior to the taking. He thought subject property more valuable than that involved in the Turner to Lard sales, but less valuable than the location sold by Harco to Humble.
Mr. LeJeune disregarded the sales of subject property to Owner because his investigation revealed these transactions were made in a hurry, and that the owners could have gotten more money had they waited. He did not consider the two sales from Turner to the Powers of tracts having 128 feet front on Range Road because such limited frontage did not lend itself to some superior commercial use such as for a service station.
Owner's appraiser, Kermit Williams, valued subject property at 70¢ per square foot, or $19,331.90 for the 27,617 square feet expropriated, which valuation was accepted by the trial court. In reaching his conclusion, Williams mainly considered three comparables, one was the Harco to Humble Oil, the other two were the Turner to Lard sales of lots fronting 50 and 150 feet, respectively, on Range Road across from subject property. While Williams did not specifically consider the two Turner to Lard sales as a single transaction, his testimony reasonably infers he considered this to be the case. Through discussion with Mr. Lard, Williams determined the *909 purchaser wanted a location 200 feet front, and that while the owner might possibly find some use for the improvements on the tract containing the residence, Lard placed no serious value on the improvements, and bought the land for the location alone. He considered the Harco property far more valuable than subject tract because of the former's location near the interstate down-ramp. Such locations, he conceded, brought more than ordinary market value. Williams pointed out that oil companies usually require a minimum of 200 feet frontage for which reason, he considered subject property, having 604 feet frontage, might at some future time bring top oil company prices. However, he considered the median per square foot price of the three comparables used (70 cents) to represent the fair market value of subject property.
Williams considered the Turner to Powers sales, and also the transfer from Turner to Waldrop. He did not consider these transactions sufficiently comparable to be used in fixing market value. Williams also considered, but placed no value on the sales of subject property by the Tates, because his investigation disclosed these sales were distress transactions. He explained that family problems existing between the owners resulted in a hurried sale which influenced the price. He also discounted these transactions because of the time and growth factors which elapsed in the interval between these sales and the taking of subject property. Williams put practically no reliance on the Mellon sales, and was of the opinion the improvements on that property played no part in the price.
Owner testified in effect that when he purchased from the Tates, he supposed they wanted to get rid of the property. He was aware he bought for considerably less than what was then currently being paid for commercial locations in the area.
The trial court accepted LeJeune's and Williams' testimony that the two Tate sales were distress transactions, and disregarded these transfers as comparables. Next, the trial court dispensed with the Turner to Powers sales, and the Turner to Waldrop transfer, on the ground that these transactions involved less than the 200 front foot minimum required for more valuable commercial locations such as service stations and drive-in grocery stores. The trial court then considered the Turner to Lard sale of the lot having a 150 foot front which Williams, for all practical purposes, used as his sole comparable. Accepting Williams' testimony that the improvements on this lot added nothing to the value, the court determined that the sale price thereof, at 70 cents per square foot, represented the true market value of subject tract.
The Department contends the trial court erred in: (1) Fixing market value on a single transaction, namely, the sale of the 150 by 230 foot lot from Turner to Lard; (2) Holding the Tate sales were not comparables because they were distress transactions; (3) Failing to consider the Lard purchases as a single transaction, and holding that the improvements on the 150 by 230 foot lot bought by Lard did not contribute to its value; and (4) Failing to consider as comparables the two Turner to Powers sales of property totaling 250 feet frontage, more than sufficient for commercial use, situated directly across the road from subject property.
In an expropriation proceeding, the landowner is entitled to the market value of the property taken calculated upon its best and highest use. Market value is the price paid as between a willing and informed buyer and a willing and informed seller in the ordinary course of business.
The parties concede that the best indicia of market value is the price paid for similar properties commonly referred to as comparables. Owner concedes it is incumbent upon him to establish by convincing evidence that the value of the property taken exceeds the estimate of value made by the Department and deposited in the registry of court upon institution of these *910 proceedings. State, Through Department of Highways v. Kennedy, La.App., 193 So.2d 848.
It is well settled that the testimony of qualified experts, who determine market value in expropriation proceedings, will be given effect insofar as it appears well grounded from the standpoint of sincerity and good reasoning. Where such testimony is not basically sound, such as, where comparables are not factually similar or located in the vicinity of the expropriated property, or consideration of land use is speculative or conjectural, or there appears a failure to consider other pertinent factors, effect will be given only to the opinions of those experts whose testimony is grounded on the best reasoning. State, Through Department of Highways v. Kennedy, above. Also pertinent is the concept that where an appraiser's testimony appears well grounded in part, that portion which is well reasoned and supported may be accepted, and the remainder disregarded.
Where the experts differ as to the value of land expropriated, much discretion is allowed the trier of fact in weighing the evidence, and his exercise thereof will not be disturbed on appeal unless shown to be manifestly erroneous. State, Through Department of Highways v. Henderson Properties, Inc., La.App., 264 So.2d 348.
Upon review of the record, we cannot say that the trial court manifestly erred in rejecting the sales of subject property to Owner as true comparables because they were distress sales. The testimony of Williams and LeJeune reflects that the younger Tate was anxious to sell his interest as he was leaving the area to prepare for the ministry. It also appears that certain family problems existing between the Tate vendors prompted an immediate sale which more probably than not affected the asking price.
The Department also complains of the trial court's rejection as comparables of the two Turner to Powers sales of 128 foot front tracts, utilized by both the Department's appraisers, and also the Turner to Waldrop sale of a 150 foot unimproved tract, considered by Allphin. These sales were disregarded because they involved frontage of less than 200 feet, the agreed minimum frontage for more valuable commercial locations. Assuming the lower court properly rejected the Powers sales because they involved sales of less than 200 feet frontage, we are at a loss to understand why he rejected the Waldrop purchase of a 150 foot front parcel which, like subject property was unimproved, and instead used as his sole comparable the sale of the 150 foot front improved parcel containing a substantial residence, which was involved in the Turner to Lard transaction. We detect an inconsistency in this regard. In our judgment, the Turner to Waldrop sale, at 22 cents per square foot, is as good, if not a better comparable than the Lard sale, because the former more nearly resembles subject tract in dimensions. The sale to Lard of the 50 foot front lot was for the price of 37 cents per square foot; the 150 foot front parcel bought by Lard brought 70 cents per square foot, an average of 49 cents a square foot. We are of the view that at least a portion of the difference in average per square foot price between the Waldrop and Lard sales was due to the fact that the Lard sales took place more than a year after Waldrop's acquisition.
We find no reasonable basis for Williams' conclusion that the Lard acquisitions were separate transactions, and that the price paid for one had no bearing upon the other. We do, however, agree with Williams, and LeJeune's determination that the improvements situated on the 150 foot parcel bought by Lard had little, if anything, to do with the price paid therefor.
We find the two most significant sales to be the Sullivan to Mellon and Mellon to Nesom transactions which we view as one, and the Turner to Lard transfers, which we also deem one transaction. Mr. *911 Mellon's testimony discloses that the original purchase was for the benefit of himself and his partner, Nesom, and Mellon's subsequent transfer to Nesom was merely Nesom's contribution of his half of the original purchase price. This sale, in November, 1967, was for the price of 42 cents per square foot. Although there were nonconforming improvements on the property, it appears they added little to the value.
Viewed as a single purchase, we deem Lard's acquisitions most nearly comparable to subject property, the improvements thereon discounted. It concerned a tract directly across the highway from defendant's property. In point of time, the sale took place only four months before defendant's property was expropriated. Lard acquired the two parcels on the same date, from the same seller, for the admitted purpose of obtaining a single, unified site having a front of 200 feet. He intended it for use in his business as a bulk gasoline dealer. It appears the purchase was effected in two parcels merely to accommodate the seller because a portion of the property was burdened with a mortgage. Although the record discloses Lard was using the residence as an office at time of trial, it is shown that he intends to move his bulk gasoline dealership to that location, at which time the residence will probably be removed from the site. On a purely square foot basis, the 50 front foot parcel sold to Lard brought 37 cents per square foot; the 150 foot lot produced a square foot value of 70 cents, averaging 49 cents per square foot for the entire square footage involved. This was 7 cents per square foot greater than the Mellon transaction; the difference could easily have been brought about by the time interval involved. Under the circumstances, we find that a value of 49 cents per square foot represents the market value of subject property. On this basis, we find that Owner is entitled to the sum of $13,532.33 for the 27,617 square feet expropriated, subject to a credit due the Department in the amount of $1,015.00 deposited in the registry of the trial court.
We agree with the Department's position that an agreement between a landowner and his appraisers cannot per se form the basis of a trial court's award of appraisers' fees. The amount of such an agreement may be considered, however, along with all other pertinent factors, but it is merely persuasive. In fixing such fees, the trial court is guided primarily by the amount of time and effort expended in research and preparation in anticipation of trial. State, Department of Highways v. McTeague, La.App., 244 So.2d 263. In this area, considerable discretion is vested in the trial court, and the exercise thereof will not be interfered with on appeal, absent a showing of abuse thereof.
In this instance, the trial court expressly noted that in fixing the fees, he considered the amount of time spent by the Owners' appraisers in preparing for trial. Each appraiser stated he considered many more transactions than those relied upon in the final appraisal. The judgment regarding assessment of appraisers' fees will be affirmed.
It is ordered, adjudged and decreed that the judgment of the trial court awarding defendant, Rubin Spillman, compensation in the sum of $19,332.00 for land taken, be and the same is hereby amended to reduce said award to the sum of $13,532.33, subject to a credit in favor of the State, Through the Department of Highways, in the sum of $1,015.00, and in all other respects, the judgment is affirmed. All costs of these proceedings to be paid by the Department insofar as it is permitted by law.
Amended and affirmed.