BOLIN, Judge.
Monroe Redevelopment Agency expropriated property owned by defendant, T. D. L. Corporation, as part of an extensive public works project known as the Monroe Floodwall Gap Project. Plaintiff tendered to defendant $116,000 as compensation for the taking. When defendant refused this sum, plaintiff deposited the amount tendered into the registry of the district court and instituted expropriation proceedings under the authority of Act 215 of 1968; Louisiana Revised Statutes 33 :4621 et seq.; and Louisiana Revised Statutes 19:2 et seq.
After trial on the merits, the court awarded defendant $196,432.45 as just compensation for the property expropriated and cast plaintiff with payment of all court costs including the fees of defendant’s expert witnesses. Defendant appeals, seeking an increase in the award and an increase in the fee of one expert witness. Plaintiff answered the appeal, seeking a decrease in the award for the taking and a decrease in all of the expert witness fees. We amend the award to increase the landscape architect’s fee and as amended the judgment is affirmed.
The property expropriated by plaintiff is a 50-year-old, two-story office building and lot located in downtown Monroe. The property backs up to the Ouachita River and faces the Ouachita Parish Courthouse. The building had been an old hotel which defendant purchased in 1957 and extensively renovated to house the law offices of Theus, Grisham, Davis and Leigh. Originally, the building consisted of two stories with a balcony or mezzanine between the two floors. When the property was renovated in 1957 the interior of the building was completely gutted, leaving only the shell of the structure, and the interior was then redone in two stages.
During the first stage of renovation the floor of the mezzanine area was extended to provide a ceiling for the first floor which was then completed to furnish the needed office space. In 1966 the second floor was partially refurbished for additional office space. At the time of the taking the building consisted of first floor offices, a mezzanine with the same floor space as the first and second floors, and a partially completed second floor. The mezzanine and unfinished portion of the second floor were used as storage space for inactive files, unused books, and old furniture.
During the 14-year interval from purchase to the expropriation defendant built, to one side and the rear of the building, what was described as a lovely patio and ornamental garden consisting of a brick walkway, brick wall, sprinkler system, and a stunning variety of flowering trees, ornamental shrubs, and flowers, enclosed on two sides by a wooden fence. Mr. Leigh, witness for defendant, testified the garden was constructed solely for aesthetic purposes.
Plaintiff contends the property was worth no more than $135,000, of which $33,170 was attributed to land and $101,830 attributed to the improvements. Defendant contends the property was worth $244,613.-08, or $34,475.80 for land, $6,984.85 for the garden, and $203,152.48 for the building. The trial judge, considering the testimony of all the experts but refusing to adopt any one appraiser’s opinion in toto, awarded $34,475.80 for the land and $161,956.65 for the building, a total of $196,432.45. In addition, plaintiff was cast for all costs including the fees of expert witnesses employed by defendant. No award was made for the patio and garden.
*428 On appeal defendant contends: (1) the award for the taking; of the building was inadequate because the trial judge refused to consider the rental value of the mezzanine in the “income” approach and charged an excessive rate of depreciation to defendant’s building under the “cost” approach; (2) it was error to refuse to compensate defendant for the taking of the patio and garden; (3) it was error to refuse to assess as costs the full amount charged by defendant’s expert landscape architect.
JUST COMPENSATION FOR THE BUILDING
The trial judge found the highest and best use of the property was as commercial property with a courthouse-related purpose. The lower court found in written reasons for judgment that there were no truly comparable sales from which to determine the value of the building under the “market data” approach. The “cost” and “income” approaches were used below as guides in reaching a proper award. The lower court did not adopt any one appraiser’s viewpoint entirely but tried to balance the often conflicting factual and opinion testimony of the expert witnesses. All experts readily admitted that both income and cost approaches are heavily dependent on the individual expert’s subjective opinion as to rental value, capitalization rate, depreciation figure, and other factors used in estimating the value of the property. As to the mezzanine, the trial judge noted that the office buildings used as compara-bles, for rental evaluation purposes, included a reasonable amount of storage area in the rent charged for office space. Therefore, the mezzanine should not be included as part of the rentable area.
This court has thoroughly examined the record and the trial judge’s written reasons for judgment. In view of the subjective nature of much of the testimony, we cannot Say the trial judge committed manifest error in his consideration of the evidence and determination of just compensation for the taking.
JUST COMPENSATION FOR THE PATIO AND GARDEN
The trial judge denied compensation for the taking of the patio and garden because “they are considered to be an esthetic improvement, not adding to the value of the land.” We note defendant in the instant case has not argued that the value of the land was enhanced by the presence thereon of shrubbery and landscape improvements under a market data approach; or that the value of the building was enhanced under an income approach. To the contrary, defendant contends the taking of the garden should be considered as a distinct and com-pensable item in addition to compensation due for the taking of the land and building. Defendant bases this argument on the constitutional mandate of “just and adequate compensation” and cites as authority for this contention, Housing Authority of Shreveport v. Green, 200 La. 463, 8 So.2d 295 (1942); State, Department of Highways v. Blair, 285 So.2d 212 (La.1973); and State, Department of Highways v. Crossland, 207 So.2d 898 (La.App.2d Cir. 1968). We find these cases inapposite.
Green and Crossland concerned expropriation of residences for which the market data approach did not afford a basis for a determination of just compensation because of the particular peculiarities of each home. Blair involved a taking of trees and shrubs but, unlike the present case, the trees and shrubs were found to be an integral part of the defendant’s landscaping business.
The main issue in the cases cited above concerned the proper method to measure the value of the thing taken in each. Whether or not the thing taken could properly be considered as an independent item of damage was not at issue in either Crossland or Green. In Blair the supreme court relied on R.S. 48:218 as statutory au *429 thority for valuing the plants separately from the land. Defendant does not urge the application of R.S. 48:218 to the circumstances presented herein.
Louisiana jurisprudence has established that purely aesthetic improvements should be considered only as to any enhancement the improvement may have on the value of the property as a whole and such improvements are not to be valued as an independent item of damages. See Dixie Electric Membership Corp. v. McDowell, 280 So.2d 306 (La.App. 1st Cir. 1973) and State, Department of Highways v. Burleigh, 160 So.2d 782 (La.App. 3d Cir. 1964). In the instant case, unlike Blair, the garden had no measurable monetary value apart from its influence on the rental rate of the office building or on the value of the land; as there is no evidence in the record reflecting such an effect, we find no error in the trial court’s denial of compensation for these aesthetic improvements.
EXPERT WITNESS FEES
Defendant argues that the award for the fee of his landscape architect should be increased from $100 to $150, which was the amount charged by that appraiser. The failure to award the amount charged was apparently an oversight, since the trial court stated if the invoice of the architect was admitted in evidence plaintiff would be cast for this amount as an expert witness fee. Plaintiff did not object to the invoice being admitted.
Plaintiff argues on appeal the fees of all defendant’s witnesses should be reduced and in some cases disallowed altogether. From our review of the record we find no abuse of the discretion accorded the trial judge in fixing the fees awarded the expert witnesses under the circumstances presented in this case.
Accordingly, the judgment is amended to increase the award to the landscape architect to $150 and, as amended, the judgment is affirmed at plaintiff’s cost.