321 So.2d 429 (1975)
MONROE REDEVELOPMENT AGENCY, Plaintiff-Appellee,
v.
Frank MERKEL, Defendant-Appellant.
No. 12689.
Court of Appeal of Louisiana, Second Circuit.
October 1, 1975.
Rehearing Denied November 6, 1975.
Writ Refused December 19, 1975.
*430 Theus, Grisham, Davis & Leigh, by: Robert L. Curry, III, Monroe, for defendant-appellant.
Thompson, Sparks, Cudd & Dean by: George B. Dean, Jr., Monroe, for plaintiff-appellee.
Before BOLIN, PRICE and MARVIN, JJ.
En Banc. Rehearing Denied November 6, 1975.
BOLIN, Judge.
Monroe Redevelopment Agency expropriated defendant's building and lot which it considered necessary in furtherance of its "Monroe Floodwall Gap Project". Plaintiff deposited with its petition the sum of $123,510 as compensation for the property taken. Defendant answered the suit and waived any right to contest the expropriation and consented to the taking of his property, but denied the amount deposited was either the fair market value of the property or just compensation to defendant for the property being expropriated.
The parties agreed amicably to adjudication of title to plaintiff and withdrawal of the deposit by defendant. On the day of the trial a joint stipulation was filed in which defendant agreed to accept the sum of $60,000 for the expense of moving and relocating and the value of process electrical and plumbing systems, subject to a credit of $27,327 already deposited for the latter property. It was also stipulated the "sole and only issue to be resolved is the just compensation due defendant for the taking of his building and site improvements (with normal service utilities) and for the taking of the immovable fixtures less and except the process electrical and plumbing system."
In a pre-trial statement, signed by attorneys for both parties, it was stipulated the value of the land expropriated by plaintiff was $35,400, but defendant disputed that the remainder of the deposit constituted fair market value of just compensation for the improvements situated on the property.
After trial, during which expert witnesses for both parties testified at length concerning the value of the building and the other items in contest, the district judge rendered judgment in favor of defendant, Frank Merkel, and against Monroe Redevelopment Agency awarding the sum of $147,209, less a credit for the amount previously deposited and withdrawn from the registry of the court. Additionally, the court fixed the fees of the expert witnesses employed by defendant in the following amounts: Clark Smith, building cost estimator, $500; Russell Doiron, appraiser, $1500; and Thomas Dupree, $1500. Plaintiff was cast with all costs, including the fees of defendant's expert witnesses.
From this judgment defendant appealed, seeking an increase in the award, and plaintiff answered the appeal, seeking modification of the judgment and reduction of the award to the amount previously deposited by plaintiff. We affirm the judgment.
The trial judge, in his excellent and comprehensive written reasons for judgment, detailed the facts and circumstances of plaintiff's business as well as the court's conclusions with regard to the application of the law to respective appraisals. We shall only recount the facts necessary to an understanding of the proceedings.

COMPENSATION FOR BUILDING
Merkel operated an industrial laundry on the property involved, which consisted of a main building constructed of wood and masonry and an attached metal boiler room. The lot, abutting the Ouachita River, contained over 18,000 square feet in the "high bank area" and nearly 17,000 square feet in the "pool stage" area. The estimated age *431 of the building was 60 years and, according to the testimony, had been built to house the Monroe Steam Laundry. Defendant purchased the old laundry building and equipment from the previous owners in November, 1966, for $50,000. According to defendant's manager, a total of $36,694.72 had been spent in making repairs, alterations and additions to the property prior to the date this suit was filed in March, 1973. A major portion of the labor involved in these renovations had been performed by defendant's employees.
The subject property is situated on the Ouachita River Bank one block south of the Ouachita Parish Courthouse and some five blocks south of DeSiard Street which is the "main" street of the older part of Monroe, Louisiana. In this area most of the buildings were quite old and many were vacant and were no longer used except for warehousing or storage.
Plaintiff's appraisers, J. Wayne Medley and W. Dean Carter, using a combination of the three recognized appraisal methods, market data comparison, income capitalization approach, and cost of replacement less depreciation, arrived at a building value of $14,450 and $20,000, respectively. Doiron and Dupree, defendant's experts, relying principally on reproduction cost less depreciation, reached the respective appraisal figures of $155,388.77 and $159,450.00. Dupree considered the laundry as a special purpose building because of the fact that it was built and operated as a laundry from the time it was first built until the date of expropriation. As observed by the trial judge:
"Even though all appraisers stated they were seeking to determine `fair market value' and all agreed upon the theoretical definition of that term, it is clear from the testimony that throughout each appraisal, the experts relied repeatedly at various stages upon what were referred to as `judgments' or `judgment factors.' Moreover, in actual use, there was a most dramatic difference between the two pairs as to what `market value' really is. Consequently, each result is based upon a mathematical calculation of such imprecise nature and composition that is of little more value than if each had merely stated the result. The gross disparity results primarily from wholly differing concepts of a `willing buyer' and of the `cost approach'".
It is apparent from the testimony of plaintiff's appraisers that they sought to determine what a willing buyer would be interested in paying for the improvements if he considered the location, varying possible uses of the buildings, access, efficiency of arrangement, method of construction, cost of maintenance or repair, potential income and other objective factors.
On the other hand, the testimony of defendant's appraisers reveals a subjective approach, using either the value to defendant himself or the price a buyer would pay if he wanted the buildings, exactly as they were at the time of taking, for use in the operation of an industrial laundry. Both Doiron and Dupree, defendant's appraisers, requested a detailed cost estimate of exact reproduction which defendant furnished at considerable expense. Clark B. Smith, an experienced construction cost estimator, testified he had prepared the written estimate which was introduced into evidence and reflected a reproduction cost of $352,802.38. Smith charged defendant $810 for preparing the estimate, used by both of defendant's appraisers, although Doiron and Dupree applied their individual depreciation adjustments and arrived at slightly different amounts.
We are cognizant, as was the trial court, of the recent expression of the Louisiana Supreme Court in Louisiana, Department of Highways v. Blair, 285 So.2d 212 (1973), that "just compensation" and not necessarily "fair market value" is the goal of these deliberations. Nevertheless, we agree with the lower court that defendant's appraisers' calculations are unacceptable as the measure of the value of the improvements in this case.
It is perhaps true defendant's highest and best use of the property was the use *432 being exercised by him for his own peculiarly adapted laundry operation; however, the special features of the building had become largely obsolete and defendant had been required to spend almost as much as his purchase price to adapt the improvements to his own method of operation. Many of the original features in the building, such as the cold storage vault, were being used for other purposes and were not shown to have any value other than for uses which would have required no special construction. Thus it would have been unfeasible to incorporate such items in a new building.
The trial judge succinctly summed up his conclusion relative to the value of the building in the following language, with which we agree:
"Without specific detail of calculation, believing that `replacement' is a prefereable guide to `reproduction' in any cost calculation in this case, concluding that the subject improvements are substantially depreciated by physical and functional and economic factors, but being also of the opinion that existing use is a relevant factor, the Court has reached the conclusion that the value of the improvements (building and parking surface) is greater than estimated by plaintiff's experts but far less than the almost wholly subjective estimates of defendant's appraisers. Just compensation for these items of property is fixed at $40,000."

SPECIAL IMMOVABLE FIXTURES
Plaintiff's witness, Raymond Jones, an employee of an appraisal and consultant firm specializing in appraising machinery, equipment and special purpose fixture properties, was accepted as a qualified expert in this field. He assigned a value of $40,783 for the special laundry equipment. Of the numerous items included in this category, defendant actively contested only the value assigned to shelving, slick rails, bins, boilers and their foundation, a solvent tank and automatic loading chute and a lint vacuum catch. Although defendant did not dispute the cost figures of plaintiff's appraiser, except with respect to the loading chute and the lint vacuum catch, he does dispute all depreciation deductions.
Calvin Travis, who had serviced the two boilers in the laundry and had installed safety features and brought them up to specifications, testified for the defendant that the boilers had a future life expectancy of between 20 and 30 years. Plaintiff's witness had used an average depreciation of between 40% and 45% as opposed to defendant's plant manager's opinion that a 22% rate was more appropriate.
The trial judge, balancing the fact that defendant's expert had overlooked the age factor in arriving at a remaining useful life of the two boilers, but recognizing the controls on the boilers had been replaced in recent years, fixed the total value of the two boilers at $21,708. In addition he fixed the value of the automatic loading chute at $1,400 and the lint vacuum catch at $840, which represented an increase of $3,699 over the value assigned to these three items by plaintiff. The total just compensation for all special immovable items (other than process electrical and plumbing) was fixed at $44,482. We find no manifest error in this award and this portion of the judgment will be affirmed.

EXPERT WITNESS FEES
We next consider the contention of defendant that the lower court erred in failing to award his expert witnesses, Doiron, Dupree and Smith, the full amount of the fees charged defendant for their time and expenses as well as time spent in court. Consideration has been given to the rule that the fixing of expert witness fees is within the discretion of the court and no change should be made unless we find abuse of that discretion. We have reviewed the record and the trial court's reasons for his decision and find no abuse of discretion in fixing the amount of the expert witness fees.
For the reasons assigned, the judgment of the lower court is affirmed.