336 So.2d 220 (1976)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
Charlie KORNMAN and Medallion Realty, Inc.
No. 10834.
Court of Appeal of Louisiana, First Circuit.
June 30, 1976.
Rehearing Denied August 27, 1976.
*221 A. William Mysing, Jr., Covington, Lucas J. Giordano, Metairie, for plaintiff-appellee-appellant.
Norman L. Sisson, William W. Irwin, Jr., Jerry F. Davis, Johnie E. Branch, Jr., Baton Rouge, for the Highway Dept.
Alvin J. Liska, New Orleans, for the Highway Dept.
Before ELLIS, BLANCHE and LOTINGER, JJ.
BLANCHE, Judge.
Plaintiff, State of Louisiana, through the Department of Highways, and defendants, Charlie Kornman and Medallion Realty, Inc., both appeal the trial court judgment in these two consolidated expropriation suits. Separate appeals were taken in each case. We affirm the trial court judgment in its entirety.
In Appeal No. 10,834 (District Court Suit No. 39,805), 336 So.2d 227, judgment was rendered in favor of the defendants in the sum of $62,326.41, subject to a credit of $52,207 previously deposited. The judgment was to bear legal interest on the sum of $11,526 (the amount of an additional deposit by the plaintiff) from the date of taking, February 6, 1974, until June 23, 1975, the date said sum was deposited into the registry of the court. The judgment was also to bear legal interest on $10,119.41 (the difference between the total deposit and the amount awarded by the trial court) from the date of taking until paid.
In Appeal No. 10,835 (District Court Suit No. 39,806), judgment was rendered in favor of the defendants in the sum of $32,204, subject to a credit of $21,822 previously deposited into the registry of the court. The judgment was to bear legal interest on the sum of $4,526 (the amount of an additional deposit by the plaintiff) from the date of taking, February 6, 1974, until June 23, 1975, the date said sum was deposited into the registry of the court. The judgment was also to bear legal interest *222 on $10,382 (the difference between the total deposit and the amount awarded by the trial court) from the date of taking until paid.
All costs in both suits were taxed to the plaintiff, as well as expert witness fees in the amount of $5,940.
Separate judgments will be rendered.

SUBJECT MATTER OF APPEAL NO. 10,834
Defendants owned Lot 1, Square 4, and Lots 1 and 17, Square 1, of Riverwood on the Tchefuncte Subdivision, west of Covington, St. Tammany Parish, Louisiana.
Lot 1, Square 4, was located directly opposite from Lot 1, Square 1, on Belle Terre Boulevard at the very entrance to said subdivision. Standing partially on both lots was an ornate native stone gateway, extending approximately 45 feet on either side of the boulevard, parallel to U. S. Highway 190. One-third of the gateway stood on the boulevard right of way. It was similar in style to many such structures which decorate the entrances of other affluent residential subdivisions in our locale. It differed from the average gateway, however, since it was solid stone rather than veneer, having at one time marked the entrance to the old Shushan Estate. There were no other structures or improvements located on either lot.
Lot 17 was unimproved. However, an old combination barbed and hog wire fence with concrete posts separated its rear boundary from the Highway 190 right of way.
Pursuant to State Project No. 13-11-09, Federal Aid Project No. F-76(17), Chinchuba-Covington Highway on State Route La.-U.S. 190, the three aforementioned lots were taken in fee.

SUBJECT MATTER OF APPEAL NO. 10,835
Defendants also owned Lots 21, 22 and 23 of Square 1, in the same subdivision. Those lots were also unimproved, except for a continuation of the aforementioned wire fence along the rear boundary of each. Only a portion of each of the latter lots was taken by the aforementioned project; 15,063 square feet from the rear of Lot 21, leaving a remainder of 9,737 square feet; 23,307 square feet from the rear of Lot 22, leaving a remainder of 17,230 square feet; and a small 2,844 square foot triangular portion from the rear of Lot 23, leaving a remainder of 31,431 square feet.
At the trial it was conceded that the highest and best use of all of the expropriated property in both suits was residential.

THE TRIAL COURT JUDGMENT
After hearing the testimony of four real estate appraisers, two for each side, the trial judge concluded that the appraisal of defendants' expert, Frank J. Patecek reflected the true value of the property. Therefore, he adopted the values set forth therein.
Accordingly, fifty-three cents per square foot was set as the fair market value of Lot 17 and both Lots No. 1, resulting in a total worth of $62,326.41. Lot 21 was valued at approximately sixty-three cents per square foot; hence, the value of the part taken was $9,580. Lot 22 was valued at fifty-three cents per square foot, resulting in $12,353 due for the part taken. The fair market value of Lot 23 was set at fifty-seven cents per square foot, resulting in $1,621 due for the part taken.
All appraisers agreed that no severance damages were due for Lot 23 and, therefore, none were awarded.
Regarding Lot 22, the plaintiff's appraisers argued that no severance damages were due. However, the trial judge adopted Patecek's conclusion that Lot 22 was damaged by the taking of 23,307 square feet from the total of 40,537. The value of the remaining 17,230 square feet was considered to be diminished by approximately 40 percent, *223 resulting in severance damages of $3,660 (approximately 40 percent of the before-value of the remainder, $9,131, equals $3,660).
Lot 21 was regarded as damaged by all appraisers, and the trial judge again accepted Patecek's estimate that the 9,737 square foot remainder of Lot 21 had lost approximately 80 percent of its value since the remaining square footage was insufficient to accommodate a residence. Therefore, $5,000 was awarded for damages thereto (approximately 80 percent of the before-value of the remainder, $6,193, equals $5,000).
In recapitulation, the trial judge awarded $62,326.41 (fifty-three cents per square foot) for the total taking of Lot 17 and both Lots No. 1; $9,580 (approximately sixty-three cents per square foot) for the part taken from Lot 21, together with $5,000 severance damages; $12,353 (fifty-three cents per square foot) for the part taken from Lot 22, together with $3,660 severance damages; and $1,621 (fifty-seven cents per square foot) for the part taken from Lot 23, with no severance damages awarded.
In spite of the defendants' objections, no award was made for either the stone gateway or the wire fence.
A $2,400 appraisal fee was awarded to Patecek, plus $400 for conferences and court appearance. Kermit A. Williams, defendants' other appraiser, was awarded a $2,500 appraisal fee, plus $400 for conferences and court appearance. Defendants' witness, John Carr, was awarded $240 for his appraisal and court appearance with regard to the stone gateway.

PLAINTIFF'S APPEAL
The plaintiff contends that the trial judge erred by accepting the appraisal values in both suits offered by the defendants' appraiser, Patecek. Plaintiff cites the comparable of Bailey to Morgan of 25,155 square feet for $17,600 as being the highest price paid for any lot in the subdivision prior to the taking. Since Patecek's appraisal reached a value higher than $17,600 on all lots but Lot 21, plaintiff contends that his figures should have been disregarded by the trial judge.
This argument fails to consider the large size of the subject lots, all of which were over 34,000 square feet except Lot 21. The additional square footage would certainly be justification for valuing the subjects at a higher price than that paid by Morgan for a lot of only 25,155 square feet.
The plaintiff relies heavily upon the sale of Strickland to Anzalone, which was 36,000 square feet for only $16,000 (forty-four cents per square foot). However, the Anzalone property is not really comparable to the subject properties, even though it contains similar square footage.
Size alone does not give rise to comparability. The Anzalone property lies adjacent to a natural drainage area and the western and northern portions of the lot are subject to standing water during heavy rains, whereas the subject tracts are all high and well drained.
Patecek also utilized the Anzalone sale; however, contrary to the plaintiff's appraisers, he adjusted the price upward by approximately 9 percent to account for the better topography of the subject tracts. From our review of the record, we feel this adjustment was warranted.
We have thoroughly studied the appraisals and testimony of each expert and conclude, as did the trial judge, that Patecek's report is the most persuasive as to the value of all of the subject tracts. He logically adjusted each comparable for size, time, topography and shape; whereas, the plaintiff's experts did not.
The most reliable and approved method for determining the fair market *224 value of immovable property is to consider comparable sales, adjusting them to compensate for their good and bad features with regard to the subject. State, Department of Highways v. Smith, 270 So.2d 178 (La.App. 1st Cir. 1972), writ refused, 272 So.2d 379 (La.1973); State, Department of Highways v. Munson, 174 So.2d 923 (La. App. 1st Cir. 1965), writ refused, 247 La. 1091, 176 So.2d 146 (1965).
In expropriation cases much discretion is granted to trial judges in weighing the testimony of experts, and findings of value based upon such evidence will not be disturbed unless clearly erroneous. State, Department of Highways v. Spillman, 276 So.2d 905 (La.App. 1st Cir. 1973); State, Department of Highways v. Hickman, 277 So.2d 525 (La.App. 3rd Cir. 1973). We cannot say that it was error for the trial judge to adopt Patecek's appraisal value of the subject tracts.
Regarding severance damages, the plaintiff again objects to the trial judge's adoption of Patecek's report.
Based upon Patecek's report, the trial judge found that the 17,230 square foot remainder of Lot 22 was damaged by 40 percent. To justify his conclusion, Patecek showed that Lot 20, which was also partially expropriated by the project in a similar manner to Lots 21 and 22, suffered a decrease in value of approximately 40 percent when compared to other property in the subdivision which had not been affected by the project. Additionally, the taking left Lot 22 only slightly larger than the 16,000 square foot subdivision minimum.
There is ample evidence in the record to support a finding that Lot 22 was damaged by the instant taking and, therefore, in accordance with the Spillman and Hickman cases, supra, the trial judge's conclusion will not be disturbed.
Plaintiff also argues that Lot 21 could be sold to one of the two adjacent lot owners and, therefore, it was damaged only 50 percent rather than 80 percent, as found by Patecek and the trial judge.
As a result of the taking, Lot 21 was reduced to 9,737 square feet, or approximately 6,000 square feet below the subdivision minimum. Even with its reduced area, the subdivision restrictions limit the use of Lot 21 to that of a private residence for one family. Therefore, in addition to precluding the building of a residence thereon, the restrictions also seem to preclude the use of the lot for purposes of building a swimming pool or tennis court and, accordingly, greatly reduce its desirability to the adjacent lot owners. For these reasons, we find no error in the trial judge's conclusion that the remainder of Lot 21 was damaged by 80 percent of its prior value.
The plaintiff argues that it should not be required to pay interest on the amounts of its amended deposits.
The day before trial, June 23, 1975, well over one year subsequent to its initial deposit, the plaintiff filed a Supplemental and Amended Petition increasing the deposits in Suit No. 39,805 by $4,526 and in Suit No. 39,806 by $11,526. Since the just compensation awarded by the trial judge was more than the total amount deposited by the plaintiff, the judgment assessed plaintiff for interest on both supplemental deposits from February 6, 1974, the date of taking, until the deposit date, June 23, 1975.
LSA-R.S. 48:455, as it applied on the date of taking, read as follows:
"The judgment rendered therein shall include, as part of the just compensation awarded, interest at the rate of five per centum per annum on the amount finally awarded as of the date title vests in the plaintiff to the date of payment; but interest shall not be allowed on so much thereof as has been deposited in the registry of the court. Added Acts 1954, No. 107, § 1, effective June 24, 1954."
*225 The plaintiff argues that no interest is due on the amount deposited into the registry of the court regardless of when it is deposited, even where it is deposited the day before trial as was done herein. The plaintiff cites no authority for its interpretation of Section 455.
The intent of Section 455, when considered with the requirement that the landowner must be awarded just and adequate compensation under Article 1, Section 2 of the Louisiana Constitution of 1921, is that interest is due on all amounts awarded in excess of the initial deposit until the date of payment. Therefore, interest was correctly awarded by the trial judge on $4,526 and $11,526 from the date of taking until the sums were deposited on June 23, 1975.
Lastly, the plaintiff challenges the award of expert witness fees. Plaintiff contends that the awards to Patecek and Williams were improper since they merely conformed to the amounts agreed to between the experts and the defendants; and furthermore, neither appraiser testified as to the amount of time spent compiling his report.
The agreement between an expert and the party for whom he testifies is not the sole criterion to set the amount to be taxed as court costs for his services. Recreation and Park Commission of East Baton Rouge Parish v. Perkins, 231 La. 869, 93 So.2d 198 (1957).
However, in order to change the amount awarded to defendants' experts, this Court must find that the trial judge abused the great discretion properly accorded him in such matters. Monroe Redevelopment Agency v. T. D. L. Corporation, 321 So.2d 426 (La.App. 2nd Cir. 1975), writ refused, 323 So.2d 478 (La.1975); Monroe Redevelopment Agency v. Merkel, 321 So.2d 429 (La.App.2nd Cir. 1975), writ refused, 323 So.2d 478 (1975); State, Department of Highways v. Spillman, supra.
In the instant case, the appraisals and trial testimony of both of defendants' experts speak for themselves. Both are indicative of a great deal of preparation and expertise and could not have been executed without much effort on their part. We, therefore, find no abuse of discretion in the awards.
Plaintiff also asserts that the $240 award to John Carr for his appraisal of the stone entranceway was improper since Carr was not qualified as an expert at the trial. It is true that Carr was not technically introduced as an expert witness; however, his function was the same as an expert, that is, he advised the court concerning a pending matter which was peculiarly within his knowledge as manager of a stone and marble business. It was, therefore, not an abuse of the trial judge's discretion to tax his fee as costs.

DEFENDANTS' APPEALS
The most serious issue on this appeal is defendants' contention that they should have been awarded an additional amount over and above the fair market value of both Lots No. 1 as compensation for the taking of the native stone gateway. We quote from defendants' brief:
"It is defendants' contention that the stone wall is an immovable improvement, that it has an esthetic value, belonging to the defendants as the owners of the two lots expropriated, and that the defendants are entitled to be compensated for the value of this improvement on their lots as a separate item apart from the value of the land upon which the stone wall sits."
Just and adequate compensation rather than fair market value is the requirement in expropriation cases, and there is no one set formula by which to establish that figure. State, Department of Highways v. Terrace Land Company, Inc., 298 So.2d 859 (La.1974). To clarify its conception *226 of just compensation, the Court in the Terrace Land Company case stated:
"* * * Whatever approach or formula of valuation used, it should take into consideration `all factors which lead to a replacement of the loss caused by the taking. This means substantially that the owner is placed in as good a position pecuniarily as he would have been had his property not been taken [Many citations omitted.]' State Through Dept. of Highways v. Ragusa, 234 La. 51, 99 So.2d 20, 21 [1958]." (298 So.2d at 863)
Therefore, even though the stone wall may have possessed a certain amount of aesthetic value to the defendants, they are entitled to recover only what is required to place them in as good a position pecuniarily as they would have been had the property not been taken.
We note that the defendants' own appraisers did not consider that the presence of the wall increased the fair market value of the lots. Patecek's appraisal report completely ignored the presence of the wall to arrive at the fair market value.
Defendants' other appraiser, Kermit Williams, did the same. In fact, Williams considered the wall to be an "amenity" to the property. According to Webster's Third New International Dictionary, unabridged, the word "amenity," when referring to real property such as that before the court, connotes: "1 * * * b(1): the attractiveness and aesthetic or nonmonetary value of real estate or of any structure for purely residential use" (emphasis supplied). Accordingly, Mr. Williams did not consider that the wall was of any monetary value to the defendants.
The defendants have not shown that they are obligated to re-erect the wall and, therefore, they have suffered no pecuniary loss therefor. In fact, only a portion of said wall rested upon defendants' property. As previously noted, defendants have also not shown that they received less than the fair market value of the subject lots.
We are aware of the case of State, Department of Highways v. Blair, 285 So. 2d 212 (La.1973), where an award was made for horticultural specimens in addition to fair market value of the property. However, the improvements therein were "for the actual use in a business pursuit, to exhibit to clients interested in the possibilities of landscape architecture." Therefore, the Court held that to deprive the landowner of those improvements without additional compensation would have violated Article 1, Section 2, of the Louisiana Constitution of 1921.
Another example of the flexibility of the concept of just compensation is found in the excellent reasoning of Judge Redmann in Orleans Parish School v. Montegut, Inc., 255 So.2d 613 (La.App. 4th Cir. 1971). Therein the landowner was properly awarded the fair market value of his land plus reasonable expenses for an aborted apartment house project since the land was expropriated after pilings had been driven and financing costs, et cetera, had been incurred.
Without the additional compensation over and above the fair market value of the land, the owners in the Blair and Montegut cases, supra, would not have been placed in as good a position pecuniarily as they would have been had the property not been taken, Terrace Land Company, supra.
In the instant case, the defendants have not met the burden of proving that the award of the trial court did not leave them in the same position as before the taking. The defendants have not proven that they could have obtained a higher price for the subject property than they received as compensation from the plaintiff, nor have they shown that the wall was uniquely valuable to them as was shown with regard to the improvements in the Blair and Montegut cases, supra. In view *227 of the foregoing, we conclude that it was proper to deny an award for the stone wall.
The trial judge also refused an additional award for the wire fencing. Because of the affluent nature of the subdivision, this ordinary barbed and hog wire fence added no value to the property before the taking. For the same reason, it would also not contribute to the value of the lot if it were reconstructed on the new property line after the taking.
The inescapable conclusion is that there was no showing that defendants, after receiving the fair market value of the lots plus applicable severance damages, were not in as good a position as they would have been had the property not been taken, Terrace Land Company case, supra. This was the finding of the trial judge, with which we agree.
For the above and foregoing reasons, the judgment of the trial court in Appeal No. 10,834 is affirmed. The State is to bear all costs as can be assessed against it.
AFFIRMED.